DOROTHY PICKERING, *a Minor, by Claude Pickering, her Guardian ad Litem, Respondent,* v. CARLTON STEARNS *et al., Appellants.*[1]

*Ellis & Evans,* for appellants.

*Vanderveer & Bassett,* for respondent.

BEALS, J.—Defendants Stearns are the parents of Ed Stearns, a minor, who, May 18, 1933, drove the family car, owned by defendants, from their home in

[1]Reported in 46 P. (2d) 394.

Montesano to Patterson lake in Thurston county, for the purpose of conveying a party of young people to a school picnic. John Oldfield, Marie Forgey and Bethel Keyes, students at the Grays Harbor junior college in Aberdeen, desiring to attend the school picnic, each having the privilege of inviting a friend, were the moving spirits of the party. John Oldfield invited the plaintiff, Dorothy Pickering, as his guest; Ed Stearns having been invited by Marie Forgey, one of the girl students, he agreeing to furnish the automobile. John Oldfield contributed five gallons of gasoline toward the expense of the journey. Aside from that general contribution, no one of the young people paid any expenses, save his own.

After the picnic, the party started back by way of Centralia, where they attended a dance. After dancing a while, and after partaking of a light lunch, they started for home shortly after one o'clock a. m. While driving along a graveled road approaching the city of Montesano, and having just passed the station of Porter, the automobile swerved to the left (or continued straight on when the road curved to the right), departed from the traveled roadbed, crossed the shoulder of the road, and went onto a steep embankment, striking a telephone pole with great force.

As a result of the collision, Dorothy Pickering suffered severe injuries, and she thereafter, by her guardian *ad litem,* instituted this action against defendants, for the purpose of recovering damages suffered by her, as she alleged, as the result of the negligence of defendants' son, who was driving the car. The action was tried to a jury, which returned a verdict in plaintiff's favor in the sum of seventy-five hundred dollars. Defendants moved for a new trial, stating as one of the grounds for the motion that the damages allowed were excessive. The trial court announced

that, unless plaintiff agreed to a reduction in the award to four thousand dollars, a new trial would be granted. Plaintiff electing to accept judgment in the lesser amount, the motion for new trial was denied and judgment entered in plaintiff's favor for the sum of four thousand dollars, from which judgment defendants have appealed.

Appellants assign error upon the denial of their motions, first, for a nonsuit, then for a directed verdict in their favor, and finally, for judgment in their favor notwithstanding the verdict, or, in the alternative, for a new trial. They also contend that the trial court erred in giving certain instructions, in refusing to declare a mistrial because of statements made by respondent's counsel in the course of his argument to the jury, and in entering judgment against them.

In the course of his argument to the jury, appellants' counsel used the following language: "You should not mulct this father and mother in damages." Respondent's counsel, in his closing argument, said: "Don't you worry too much about who is going to pay any verdict." Whereupon appellants' counsel objected to the statement and moved to strike it, later asking that a mistrial be declared. Respondent's counsel continued with his argument as follows:

"In this case the court has told you as a matter of law that if the circumstances of the case are such that it would entitle plaintiff to a verdict against the son, then you will return a verdict against the defendants. THE COURT (interrupting): I want to get this record correct here, now. MR. VANDERVEER: Just let me finish one more now. Again the court told you that all parties are equal before the law and that sympathy for one party, or prejudice against another or the necessity of one party or the ability of the other to pay can have no place in your deliberation. So why call it mulcting fathers and mothers, unless the purpose be to get you to give the defendants some special consid-

eration which other people would not be entitled to. Now, that is the only thing I was trying to say on that subject."

Whereupon, the jury was excused, and, after argument, the court refused to declare a mistrial.

We cannot say that, in answering the plea of appellants' counsel that the jury should not mulct the father and mother in damages, respondent's counsel so overstepped the bounds of legitimate argument as to require reversal of the judgment by this court. The trial court was fully advised as to the incident and the surrounding circumstances, and refused either to declare a mistrial or, after the verdict, grant a new hearing. Appellants' counsel to some extent transcended the bounds of legitimate argument in making the plea above quoted, and appellants cannot now, on appeal, claim a mistrial because respondent's counsel answered the improper argument in a manner which might well have constituted error had it not been invited.

Appellants contended that the facts of this case render applicable the rule which has been applied to suits by a guest passenger against a host driver, and the court instructed the jury that, before respondent could recover against appellants, she must prove that the driver of appellants' automobile was guilty of gross negligence; this phrase being properly defined in other instructions. The court also defined to the jury ordinary negligence and reasonable care. Appellants excepted to the latter instructions, and respondent excepted to the instruction defining gross negligence. Respondent requested an instruction (which the court refused to give) defining a joint adventure, contending that the rule proper in such cases should be applied in the case at bar.

Appellants contend that the trial court committed

reversible error in instructing the jury as to the legal definitions of negligence and ordinary or reasonable care. The court later instructed the jury specifically that, if they found from the evidence that John Oldfield invited respondent to go on the expedition, and that his was the only invitation extended to her, then in law respondent was a guest in appellants' car, and, before she could recover against appellants for any injury which she received, "she must prove that the driver of defendants' car was guilty of gross negligence, as in these instructions defined to you." The court then proceeded to instruct the jury that, as between the host and a guest, the rule of ordinary care is not applicable, and that, before a guest can recover from a host, the former must prove that the latter was guilty of gross negligence. The court then, in its next instruction, properly defined gross negligence.

Manifestly, no reversible error was committed in giving this series of instructions. The application of the gross negligence rule was favorable to appellants, as, if that rule was to be applied, respondent was held to a much higher degree of proof. The instructions as given were not conflicting. The instructions of which appellants complain were merely explanatory, and afforded a not improper basis for the clear definition of the term gross negligence, given by the court.

We find in the record nothing which supports respondent's contention that she bore the relation of joint adventurer. She was not a student at the junior college, nor does it appear that she made any contribution to the expense of the journey. We are of the opinion that John Oldfield and Ed Stearns were joint adventurers, but respondent was an invited guest of the joint adventure, and bore the relation of guest to both Oldfield and Stearns. This being true, the court properly applied the rule of gross negligence.

Appellants contend that the evidence is, in law, insufficient to support a finding of gross negligence, and that the judgment must be reversed and the action dismissed.

Concerning the accident itself, the testimony is quite vague. Respondent and her escort, John Oldfield, were sitting in the rear seat. Respondent testified that she might have been asleep; in any event, neither she nor Oldfield could throw any light on the reason for the accident. The other two girls were sitting with the driver, Ed Stearns, in the front seat. The third lad had left the party at Centralia. Marie Forgey, who had invited Stearns to the picnic, and who was sitting next to him, was asleep with her head resting on the shoulder of Bethel Keyes.

Miss Forgey did not testify, but Miss Keyes, called as a witness for appellants, testified that she was awake, and that at a point about three hundred yards from the place of the accident, she asked Stearns a question, which he answered. She further stated that, as the car rounded a bend in the road, "there seemed to be a jog of some sort, and the next thing I knew we were just going off the road." On cross-examination, she stated that, while she was observing the road ahead, she did not see any obstruction thereon.

The accident occurred just after the car had passed the town of Porter. The winding road was graveled, and approximately sixteen or eighteen feet in width. As described by John Oldfield, there was first a curve to the right around a bluff, then a slight curve to the left, followed by a second bend to the right. There was a railroad track to the left, or south, of the road, several feet below the level thereof. The driver was not speeding, the car going between twenty-five and thirty-five miles per hour. The car went over to its left hand side of the road, onto the embankment, and ran into a

telephone pole, coming to a stop after the left side of the car was badly damaged. Respondent was severely injured, and was taken to the hospital in an ambulance.

C. B. Reinhart, testifying on behalf of respondent, stated that the damaged automobile was brought to his garage the day of the accident; that, a piece of the body of the car being missing, the witness went the same day to the scene of the accident, where he found the missing bit in the ditch; that he examined the road, which was sixteen or eighteen feet in width, covered with gravel; that he traced a fresh automobile track from the pole which the car struck back for a distance along the road; that the track indicated that the car, going west, had kept straight on instead of following the road on its slight curve to the right.

Ed Stearns testified that he was driving the car at the time of the accident; that he was not sleepy, nor even drowsy, and that he did not go to sleep. He testified that, just before the accident occurred, the car

". . . ran over an obstruction in the road, what I believe to be was gravel. The road graders scraped up gravel along the country roads, and I believe that is what I hit. It swerved the car to the left, and my latest recollection was driving, — was trying to bring the wheel back this way (indicating). I saw the ditch come down over my arm."

Mr. and Mrs. Ed Oldfield, the parents of John Oldfield, and John himself, testified that, within two days after the accident, they went to see Ed Stearns, who was then confined to his bed as the result of injuries received in the crash, and that Ed was then asked by Mr. Oldfield, Senior, how the accident occurred, to which he replied that he could not say, unless he had gone to sleep. Claude Pickering, respondent's father, testified that, some days after the accident, Ed Stearns and John Oldfield called at his store, and that the wit-

ness then asked Stearns the cause of the wreck, to which Stearns replied: "Well, Mr. Pickering, I guess I must have gone to sleep." John Oldfield testified that he heard Ed Stearns make the remark just referred to to Mr. Pickering. Mr. Reinhart testified that, a day or so after the accident, he had a conversation with Ed Stearns at the latter's home, in which the matter of whether or not Ed Stearns had fallen asleep was discussed between Ed and the witness, and that Stearns did not then deny that he had fallen asleep.

Ed Stearns, replying to a question as to whether or not he told Mr. Oldfield that he might have gone to sleep, stated:

"I believe that I told Mr. Oldfield that I might have gone asleep, but I did not intend to state that I had gone to sleep, or that I believed,— Q. (interrupting) Do you now believe that you had gone asleep? A. No, sir."

In this connection, Stearns testified as follows on cross-examination:

"Q. Why did you tell him that you might,— A. (interrupting) For the reason when they came up to the house to see me, at that time I was not in a condition to discuss the accident. When he asked me what happened I said I did not really know. I might have gone to sleep. I might have done a thousand other things. Q. Why did you offer that as a possible explanation? A. Well, simply,— Q. If the idea never entered your head that you had gone to sleep, why, when he asked that, was it necessary for you to explain that you might have gone to sleep? A. Because, at that time I could not think of anything else that might cause it. I was thinking,— I had pressure of the brain, as Doctor Fitts will testify. I felt sick at the time. At that time I could not state to them why it had happened."

Appellants vigorously contend that the evidence does not support a finding of gross negligence

on the part of the driver. Many cases are cited by the respective parties upon the question of what facts do or do not support a finding of gross negligence. Appellants cite the opinion of the supreme court of Michigan, in the case of *Boos v. Sauer*, 266 Mich. 230, 253 N. W. 278, in which it was held that, assuming that an accident was occasioned by the driver falling asleep, and that he was guilty of ordinary negligence, the evidence did not support a finding of gross negligence. The court states that the Michigan rule is that "gross negligence requires willful or wanton misconduct," and that such a state of affairs was not shown.

The supreme court of Ohio, in the case of *DeShetler v. Kordt,* 43 Ohio App. 236, 183 N. E. 85, applied the Michigan rule in a case based upon an accident which happened in that state. It was held that there was no willful or wanton misconduct of the driver amounting to gross negligence, and that a verdict based upon a finding of such negligence should be set aside. The rule laid down by the Michigan court differs to some extent from ours, and we do not care to adopt the principle of the cases cited from that state.

In the case of *Kaplan v. Kaplan,* 213 Iowa 646, 239 N. W. 682, the supreme court of Iowa held that a father, driving his car, was not liable to his daughter, a passenger therein, for "recklessness" because he went to sleep and wrecked the automobile. In the course of its opinion, the court said:

"For the father's act in operating the car while asleep, he was no more accountable than he would have been, had he been suddenly seized with a fit of epilepsy."

With this statement, we are not in accord, as in our opinion the measure of responsibility in the two cases referred to by the Iowa court is not the same.

In the case of *Potz v. Williams,* 113 Conn. 278, 155

Atl. 211, the supreme court of Connecticut affirmed the judgment entered upon the verdict of a jury in favor of a guest who suffered injuries as the result of the driver of the car in which she was riding colliding with another automobile going in the opposite direction. Shortly after the crash, the driver stated that he thought he had dozed off. On the trial, he swore that another car had turned out suddenly in front of him, and that he had turned to his left to avoid hitting it. The court noted that, as a guest, plaintiff could recover only if she satisfied the jury that the defendant, the driver, was guilty of reckless conduct. The court held that whether defendant was guilty of that high degree of negligence required by the law was for the jury to determine.

The laws of different jurisdictions controlling the matter of the liability of a host to his guest vary so greatly, and the facts of the different cases cited are so different, that, in determining the question here at issue, the authorities cited are of little benefit.

In the case at bar, it is not contended that the weather conditions were unfavorable. The road, while not paved, was wide and evidently in good condition. Ed Stearns testified rather vaguely to running into an obstruction which he believed to have been gravel, but it is significant that, at least for some time after the accident, he assigned no such occurrence as an excuse for the car leaving the road. He testified as follows:

"Well, my recollection of the accident,—just before the accident happened, was that I ran over an obstruction, in the road, what I believe to be was gravel. The road grader scraped up gravel along the country roads, and I believe that is what I hit. It swerved the car to the left, and my latest recollection was driving,—was trying to bring the wheel back this way, (indicating). I saw the ditch come down over my arm."

Miss Keyes simply testified that she felt a jog, or jolt, but she saw no obstruction in the road, and her testimony explains nothing as to the reason for the car leaving the road. The evidence is clear, and Ed Stearns himself admits, that he, on several occasions, assigned as a reason for the accident that he might have gone to sleep at the wheel. He testified positively that, as a matter of fact, he did not go to sleep, although his reasons for making the statements that he might have done so are vague and extremely unsatisfactory.

The automobile, which was proceeding at not over thirty-five miles an hour, left a perfectly good road of ample width, ran onto an embankment and into a telephone pole. It is not contended that the attention of the driver was suddenly distracted from his driving by any unexpected occurrence. If there was loose gravel in the road, it was probably thrown up by a scraper, and the condition of the road at the point of the accident, as far as the testimony indicated, was the same as it had been for quite a distance. Aside from Ed Stearns' own statements to the effect that he may have fallen asleep, we find in the record no reasonable explanation of why the car left the road. The driver did not claim that he applied the brake, with the result that the car skidded; he simply drove onto the shoulder on his left hand side of the road, onto the embankment, and into the telephone pole. We hold that the case made by respondent was sufficient to put appellants upon their proof. By his testimony, Ed Stearns introduced a conflict into the evidence without offering other than the vaguest suggestion as to what had actually happened.

We are of the opinion that, from the record, it should be held that the jury were warranted in finding that Ed Stearns, in driving appellants' car into a tele-

phone pole and injuring respondent, was grossly negligent. The question of whether or not the evidence warrants such a finding was for the jury, and the trial court did not err in refusing to render judgment in appellants' favor as matter of law.

Finding no error in the record, the judgment appealed from is affirmed.

MILLARD, C. J., MAIN, TOLMAN, and GERAGHTY, JJ., concur.

[No. 25631. Department One. June 17, 1935.]