[No. 13307.   Department Two.   June 16, 1916.]

BRADFORD-KENNEDY COMPANY, *Respondent*, v.
JAMES BUCHANAN, *Appellant*.[1]

BAILMENT — MANDATARY — LIABILITY — MEASURE OF DAMAGES.   A
mandatary under a gratuitous bailment to buy logs with his prin-
cipal's money, which were to be delivered to a shingle mill to be
sawn for the principal's account, and the shingles or proceeds turned
over to the principal, is liable only for the latter's loss, and not for
the whole sum intrusted; nor would the mandatary's departure from
the instructions of his principal render him liable for the whole
sum intrusted, if his action did not amount to gross negligence.

Appeal from a judgment of the superior court for Pierce
county, Clifford, J., entered June 15, 1915, upon findings in
favor of the plaintiff, in an action for conversion, tried to the
court.   Remanded for further proceedings.

*F. D. Oakley* and *John E. Gallagher*, for appellant.

*Gordon & Remann* and *A. O. Burmeister*, for respondent.

BAUSMAN, J.—Tacoma Lumber & Shingle Company, which
had been shipping shingles to the plaintiff company in
Nebraska and had already executed to it a chattel mortgage,
had become embarrassed, and at a certain time the plaintiff's
president, one Bradford, consulted with the shingle com-
pany's officers at Tacoma as to furnishing it further aid.
With Crandall, the president of the shingle company, Brad-
ford had long acquaintance.   He had at one time been his
employer, so he accepted his suggestion that defendant
Buchanan act as a depositary or agent in further advances.
The result was a conversation between Bradford and Bu-
chanan in which the latter undertook to act.   Two thousand
dollars was to be put in his hands by Bradford.   With this
logs were to be bought as the property of Bradford's com-
pany.   Whatever the conversation may have been, it finally

[1]Reported in 158 Pac. 76.

was merged in a letter from Bradford transmitting the $2,-
000, as follows:

"In order to facilitate matters (as I judge from Mr. Cran-
dall's telegram that it needs quick action), rather than wait
for draft, am enclosing you voucher for $2,000 as per my
agreement with you, i. e. to the effect that the money is to
be paid for logs delivered to the mill of the Tacoma Lumber
& Shingle Co. to be sawn for our account, shingles or pro-
ceeds of same to be turned over to us as soon as sawn and
dried, less 75c per M to be paid by you to the Tacoma Lum-
ber & Shingle Co. for sawing, drying, loading, etc.

"Please see that shipments are made as rapidly as possi-
ble, and the amount returned as soon as it can be done, with-
out inconvenience to the operation."

Buchanan, depositing the money to his own account,
speedily expended the whole in logs which he turned over to
the shingle company. Shingles were later shipped to the
Bradford company, but no definite testimony is produced as
to their quantity. According to defendant's testimony, all
these logs seem to have been, as fast as manufactured, turned
over in carload lots to Bradford, who, however, relates the
receipt of only one. This was, it is admitted, accompanied
by the shingle company's draft for payment as if it were not
the product of the Bradford company's own logs. This
draft he paid, protesting immediately, however, and de-
manding, in a letter to Buchanan and a communication to
Crandall, that the product be shipped and the $2,000 spent
according to what he called the terms of the letter.

The shingle company going soon after into the hands of
a receiver, plaintiff contends that it has never received any
of this $2,000 from Buchanan or the shingle company, either
in product or in cash. Buchanan, for his part, shows con-
clusively that he at least has got none of this money, and
that, while he paid some debts of the shingle company, he
was acting entirely gratuitously as a friend to both other
parties and, as he thought, carrying out terms agreed to by

Bradford in Tacoma and not modified by the letter. In a word, he argues that he believed he was to use this money as a revolving log-purchasing fund, that the Bradford company would demand free shingles only as the shingle company could afford to ship them without immediate payment, that the Bradford company would continue to pay for the shingles if necessary to keep the concern going, and be satisfied if shingles not shipped to it were sold and the proceeds used by Buchanan for the purchase of further logs as the Bradford company's property.

This case comes to us without apparent attempt on either side to develop it to a point where the court could properly decide. We cannot affirm the judgment for all the $2,000 against Buchanan. From the briefs and the record, it is plain that counsel on neither side presented the case upon the sole theory upon which it should be considered, that of a gratuitous bailment or, more properly, what is known as mandate. Under all the authorities, a mandatary is liable only for gross negligence, and while he must not disregard plain instructions, he is not punished when he honestly mistakes instructions. Now at the end of this letter is a qualifying phrase, the money or the proceeds are to be returned as soon as may be "without inconvenience to the operation," nor can we overlook the fact that, as this letter itself shows and as the circumstances fully disclose, Crandall was not to be without some part in this business. Moreover, no testimony whatever is adduced to show whether, in paying the small floating debt, Buchanan used part of the original $2,000 or part of the proceeds of the manufactured product sold to others. The testimony is clear, too, that sundry creditors were pressing the company, and one even threatening to take out part of the equipment, which surely the plaintiff itself, already a mortgagee, had reasons to see remain. Nor is it to be overlooked that the logs of plaintiff would become involved in laborers' claims in the event of failure, and probably in receivership expenses.

It should, therefore, be proved beyond doubt that Buchanan had no right except to buy, ship to Bradford, resell and remit. Again, suppose him liable, the measure of recovery would not be the whole $2,000, but only plaintiff's loss. The latter admits having received one carload at least out of some logs after the transaction began. All the others say it received much more. If these were from its own logs, the accounting must be different. In *Bell v. Cunningham*, 3 Pet. 69, the gratuitous agent was to invest the proceeds of a shipment in certain commodities. He bought not only these, but others against the protest of the consignor, who, however, did not signify his intention to disavow the transaction entirely. Not only was this last held matter to be considered by a jury under ratification, but it was held the damages must be measured by actual loss after accounting.

In this case no attempt has been made to ascertain that loss. Indeed, the theory of plaintiff seems to have been that the departure from instructions made Buchanan liable at once for the whole. This was quite erroneous. In *Turtin v. Dufief*, 6 Wall. 420, the gratuitous bailee was to lend on good and sufficient security. He took a mortgage but failed to have it recorded, sending it to the principal without drawing his attention to that fact, and the priority was lost by a subsequent incumbrance. The agent was held not liable. And in *Dartnall v. Howard*, 4 B. & C. 345, 10 E. C. L. 351, where he was to invest money in an annuity, he was held not liable though the investment was on an insufficient and somewhat valueless security, for his negligence was not shown to have been gross. The degrees of distinction involved in this class of cases is well set forth in *Preston v. Prather*, 137 U. S. 604.

These doctrines and authorities are not discussed in the arguments before us, and the lower court also, it is manifest, was not assisted toward the real principles and liability here involved.

The cause is remanded for further proof to be added to that already taken, and for further proceedings not inconsistent with this opinion. Costs of this court to abide the event.

MORRIS, C. J., MAIN, HOLCOMB, and PARKER, JJ., concur.