[No. 22603.  Department One.  January 5, 1931.]

W. A. GOUGH *et al., Appellants,* v. JAMES H. SMALLEY *et al., Respondents.*[1]

*Edward A. Davis,* for appellants.
*Don F. Kizer,* for respondents.

TOLMAN, J.—This is an action to recover for personal injuries received by the plaintiff wife in an automobile accident. Trial was had to a jury. At the close of plaintiffs' case, a motion for judgment in favor of the

[1]Reported in 294 Pac. 1007.

defendants was interposed and denied. This motion was renewed when all of the evidence was in and again denied. A verdict in favor of the plaintiffs was rendered, and thereafter a motion by the defendants for judgment notwithstanding the verdict was interposed, granted, and from the judgment thus entered, plaintiffs have appealed.

This is a host and guest case, and we have here the unpleasant spectacle of the defendants, respondents, both giving testimony strongly favoring the plaintiffs, appellants, upon which testimony apparently the verdict was chiefly rested.

There is some confusion as to the application by this court of the gross negligence rule, and the only serious controversy in this case to be determined is whether the evidence presents a question for the court, or was it for the jury to say that the driver of the car was, under all of the circumstances and conditions shown, guilty of gross negligence. The confusion seems to be due, in part at least, to the failure to distinguish between those tried to the court and those tried to a jury.

*Heiman v. Kloizner,* 139 Wash. 655, 247 Pac. 1034, where the gross negligence rule was first announced, was a case tried to the court, and we were there privileged to pass upon the evidence and to determine as a fact that gross negligence had not been established. *Adair v. Newkirk,* 148 Wash. 165, 268 Pac. 153, was also tried to the court, and we there determined from the evidence as a fact that gross negligence had been established.

*Saxe v. Terry,* 140 Wash. 503, 250 Pac. 27, was the first jury case in which the question was presented. The holding in that case, in effect, was that all of the evidence, viewed in the light most favorable to the plaintiff, was such that no inference of gross negligence

could reasonably be drawn therefrom. *Klopfenstein v. Eads,* 143 Wash. 104, 254 Pac. 854, 256 Pac. 333, was also a jury case, and followed the rule laid down in the *Saxe* case. It was there said:

"If on the facts of that case we could say that, as a matter of law, Terry was not guilty of gross negligence, certainly we must say the same on the facts of this case, for the danger here was not so apparent or certain as there."

*Blood v. Austin,* 149 Wash. 41, 270 Pac. 103, also a jury case, was decided on the same principle. Plaintiff's own evidence quoted in the opinion showed the exercise of care on the part of the driver, and only by disregarding that evidence could the jury have found gross negligence. The rule was again recognized and declared in *Dailey v. Phoenix Investment Co.,* 155 Wash. 597, 285 Pac. 657. Our previous cases on this subject were reviewed, and it was again held that there was no evidence submitted to the jury which would justify a reasonable inference of gross negligence.

Let us, in the light of these various decisions, examine the facts submitted to the jury in this case. Respondent Smalley, the driver of the car, was the father of the injured appellant. She, together with her husband and child, were guests in the car occupied by Mr. and Mrs. Smalley and operated by Mr. Smalley. The car was being driven at midday in broad daylight on a state highway, and was approaching a double or compound curve of which the Smalleys knew, and over which they had driven the day before. The car was a new one, and during the whole trip had not been driven at a speed to exceed twenty-five to thirty miles per hour. As the compound curve was approached, Mrs. Smalley, from the back seat, cautioned her husband, the driver of the car, suggesting that they were approaching the double curve and asking him to go slow.

All of the parties, shortly after the accident, signed reports indicating that the car was then traveling twelve to fifteen miles an hour, but all, in testifying before the jury, notwithstanding their attention was called to these statements, gave evidence indicating that the car was traveling somewhat faster than that, perhaps as much as twenty miles an hour, or even more. There is no evidence to indicate that the driver of the car, when cautioned by his wife, slackened his speed. There is some evidence to indicate a possibility that he increased his speed somewhat after rounding the first curve, which was to the left, and before entering upon the second curve, which was to the right. At any rate, on the second curve, to the right, the car passed out of the traveled portion of the road upon the left, entered into loose gravel and turned over. There is some evidence that there may have been a soft spot in the road causing the left-hand wheels to sink and the car to thus turn over, but there is also evidence that there was no soft spot, and that the capsizing was by reason of the loose gravel and the inequalities of that part of the road. Smalley testified:

"Q. You say you sunk in the loose gravel? A. Yes sir. Q. Which side of the car was it that sunk? A. Well, it was the left hand side. Q. Then what occurred? A. Well, the car turned over there. Q. What was the condition, or the lay of the land there to the left of the road where you turned over, was it level with the road, or lower, or higher? A. Well, it was about level, I think. The gravel was soft there and I got too far out and cut down and turned over. Q. When you were making that turn, did you intend to drive over— A. No sir. Q . —into that gravel? A. No sir, but I was going faster than I thought I was when I came up there. I didn't see the speedometer. I don't know how fast I was going, but I see when I went to make it that I was going too fast."

On cross-examination:

"Q. And the car in turning over did not skid? A. No. Q. It just turned over? A. Yes sir. Q. So there was not excessive speed enough behind it to cause it to slide after it turned over? A. Oh, no. The gravel just kind of settled down there, and it turned over. Q. In other words, you struck a soft spot in the road? A. I think so. Q. On the left-hand shoulder of the road? A. Yes. Q. Just off the beaten track, you were not more than a foot or eighteen inches out of the narrow beaten track, were you? A. Well, I should say yes, we were. Q. Were you? A. More than that? Q. How far would you say? A. Well, I never paid much attention. Probably six or eight feet there. Q. But your car was still on the shoulder of the road after it turned over, wasn't it? A. Well, no. No. Q. It was on the highway? A. It was on the highway, but then it was pretty well over the bank, but then it was not clear over."

Mrs. Smalley testified:

"Q. You say that you spoke to Mr. Smalley just as you were approaching that double turn? A. Yes. Q. What did Mr. Smalley do with reference to driving the car around those two turns? A. He certainly did not drive any slower. Q. What is that? A. He certainly did not drive any slower than he was driving. He drove as fast, anyway, and it seemed to me he drove a little faster. Q. Did he make the first turn all right to the left? A. He made the first turn, but I was sure when he made it he never would make the second one. Q. You were what? A. I was sure he never would make the second one, and we were going too fast, and we went right over the side of the road, and the car went so close to the edge of the road that the wheels just dropped right down. I would not say we went so much in the soft gravel as he got so close to the edge of the road we broke over. Q. Slipped over the shoulder? A. Went over the edge of the road, and we upset."

198

On redirect examination, for good measure she added:

"A. It appeared to me he kind of lost his head. He was going faster than he thought he was in the first place, and he had an idea he could make it, and then he got confused and went faster, now that is what I always thought, than he realized he was going."

Appellant W. A. Gough testified:

"A. I was in the front seat, on the right hand side. Q. What, if anything, was said by anyone when you approached this particular spot in the road? A. Mrs. Smalley cautioned Mr. Smalley that he was driving too fast, he was approaching that turn. Q. What did he do? A. He continued on. Q. Well, with reference to whether he ran— A. He did not slacken up any. . . . Q. All right, how far was it from the first turn when you turned to the left to the next turn, where you turned to the right? A. As near as I could judge, it was about a hundred feet. Q. What was the nature of that turn there, was it an abrupt turn or— A. That was an abrupt right-hand turn. Q. Right-hand turn, all right. Now, what was the condition of the road where the car overturned? A. The road at that turn is—had been made a little wide. It is a little wider at that part of the road than it is away from the turn. The road is built up on the left hand side, shored up so as to make a little slant in the road to the right hand side for the turn. I should judge that bank was up probably about there from two feet and a half to three feet, shored up. Q. All right. A. It was a fill. Of course, north from the fill, the gravel, of course, sloped off to the level ground. Q. What part of the road was it where the car overturned? A. It went over that—went over that fill, that embankment at the turn, a little past the turn. Q. That embankment, you say, was to the left hand side of the driven highway? A. Yes sir. Q. And the car went over that embankment? A. Yes sir. . . . A. No. He drove almost straight to the turn and then tried to swing his car around. Q. Then what? A. Went to swing his car around to the right, and the left hand

side of the car went over this embankment, and the car turned over. Q. Did that part of the road where the car overturned, was that so constructed or worked as to make it appear to anyone that it would be a proper place to drive? A. It would not.''

While the situation confronting the driver as he approached the curves was not a startling one, and did not indicate any great danger, yet it seems to us that there was revealed to him a situation requiring him to exercise some care. The evidence indicates that by his wife's words his attention was called directly to the conditions, and from the evidence we have quoted it seems apparent that it was for the jury to say whether he exercised slight care, or any care at all, or whether he was grossly negligent under the conditions disclosed, in not reducing his speed and more carefully negotiating the curves. In view of the many other facts with which the record bristles, were we the triers of the fact, we would have no difficulty in reaching the conclusion that the evidence failed to establish gross negligence, but we are not here the triers of the fact. We are only permitted to determine whether there was any substantial evidence from which a reasonable inference might be drawn by the jury that the driver Smalley did not exercise even slight care, and we are convinced that a jury, believing the witnesses we have quoted, might have drawn such an inference.

While ordinarily it may not be a very serious thing to drive outside of the traveled portion of the roadway, yet that is no test of the degree of negligence involved. In the *Adair* case, *supra,* we said that exercising no care whatever in a situation obviously involving great danger was gross negligence. While here we have only to say that where no care at all is exercised (and the jury could and probably did so find), it is for the jury to say from all of the surrounding conditions and

circumstances whether the danger was so obvious and apparent as to call for the exercise of some care to meet it.

It follows that the judgment appealed from must be reversed, but in making this order we feel constrained to call attention to the tone and language used by the appellants in presenting the case in their printed brief. The tone and spirit of the brief is so far lacking in respect for the courts as to call for an expression of disapproval, and the order will therefore be that the judgment be reversed, but that appellants recover no costs for the printing of their brief.

The record before us does not indicate the amount of the verdict or whether a motion for a new trial has been interposed and is undisposed of. We therefore cannot give specific directions, but must leave the trial court to proceed upon the record which may be before him, exercising his discretion as to the granting of a new trial or the reduction of the verdict, if the record permits such action; if not, he can only enter judgment on the verdict.

MITCHELL, C. J., PARKER, and MAIN, JJ., concur.

HOLCOMB, J., concurs in the result.