[No. 25279. Department One. September 24, 1935.]

MILDRED NENEZICH, *Appellant*, v. NICK ELICH, *Respondent*.

RUBY COVACH, *Appellant*, v. NICK ELICH, *Respondent*.[1]

*Vanderveer & Bassett*, for appellants.

*Whittemore & Truscott*, for respondents.

GERAGHTY, J.—We have here two actions consolidated for purposes of trial and appeal. The plaintiffs were invited by the defendant to accompany him on an automobile ride as his guests. Another guest

[1]Reported in 49 P. (2d) 33.

rider, John Lucich, brought suit below, but his case is not before us on this appeal. The defendant, accompanied by the plaintiffs, drove from the Ballard district in Seattle to Everett by the Bothell highway. Without stopping at Everett, he proceeded to return to Seattle by the Pacific highway.

Holman road No. 2, referred to as the Ballard road, extends southwesterly from a point on the Pacific highway four miles north of Seattle. The junction of the two roads forms a "wye" with its apex to the north. Proceeding southerly toward Seattle, there was a "SLOW" sign on the right hand side of the Pacific highway three hundred feet north of the junction. On the right hand side of the Ballard road proceeding northeasterly, there was a "STOP" sign about fifty feet from the junction.

Immediately before the accident, Mrs. Lizzie A. Hendricks was driving a car, accompanied by her son and another woman, northeasterly on the Ballard road, intending to take the Pacific highway from the junction to Everett. She brought her car to a stop about two feet back of the "STOP" sign, on the right hand side of the pavement, waiting for the north and south bound traffic to clear so that she could enter the highway.

While her car was at rest, she saw two cars approaching from the north, one behind the other. The first car passed the intersection in the direction of Seattle; the second, driven by respondent, turned into the road, striking the left front of her car. The fronts of both cars were raised from the pavement by the force of the impact, which also threw respondent's car into reverse. It backed away from the Hendricks car and circled around two or three times upon the pavement before coming to a stop. The plaintiff Nenezich was thrown from the car, suffering severe

injuries. Plaintiff Covach's injuries were less severe.

Mrs. Hickoks, who was riding with Mrs. Hendricks, testified that the defendant had gone half way across the intersection before turning into the Ballard road.

The plaintiffs testified that they saw nothing unusual in the manner of defendant's driving prior to the accident; that they had ridden with him before; and that they considered him a careful driver. The defendant himself testified that, proceeding south from Everett, he was driving thirty to thirty-five miles an hour; that, when he came to the Ballard road, he slowed down a little bit, probably to twenty-five miles; that he saw the lights of Mrs. Hendricks' car; that, as he turned into the Ballard road and approached the Hendricks car, his front wheels began to wobble; that he tried to swing to the right as hard as he could, "but it was probably too late and he couldn't make it."

John Lucich, the fourth member of the party, testified that, just before the collision, when the cars were five or ten feet apart, the defendant tried to swing to the right, but it was too late.

The case was tried to the court and jury. The jury returned verdicts in favor of the plaintiffs, after which the defendant moved for judgments notwithstanding the verdicts and, in the alternative, for new trials. The motions for judgments notwithstanding the verdicts were granted, and the motions for new trials denied. The plaintiffs appeal.

The respondent, Elich, having died subsequent to the verdict, motions are made for an order abating the actions and dismissing the appeals. This question is, we think, disposed of by *Garrett v. Byerly*, 155 Wash. 351, 284 Pac. 343, 68 A. L. R. 254. The facts in that case were that, after the jury had returned a verdict in favor of the plaintiff and before

the entry of judgment, motions were made for judgment notwithstanding the verdict and, in the alternative, for a new trial. The motions were argued and submitted to the court on December 15, 1928. The court took them under advisement, and on January 11, 1929, entered an order overruling them. Shortly thereafter, and before the entry of formal judgment, it was brought to the court's attention that defendant had died January 6, 1929, and motion was made to abate the action on the ground that it would not survive the death of the defendant. The plaintiff moved for judgment on the verdict as of a date preceding the death of defendant. The court granted plaintiff's motion, and judgment was entered as of December 15, 1928, the day on which the motions for judgment notwithstanding the verdict and for a new trial were submitted and taken under advisement. The executors of the defendant appealed. Passing upon the issue, this court said:

"The foregoing considerations lead to the conclusion that the courts of this state have power to enter a judgment operative *nunc pro tunc,* and it remains to inquire whether the case before us presents a proper instance for the exercise of the power. The courts recognizing and applying the principle have somewhat narrowed its limitations. One of such limitations, and perhaps the most common one, is that the cause at the time of such death must be ripe for judgment. Another is that the delay in entering judgment must not have been caused by the party applying for the judgment, and still another, finding sanction in our own decisions, is that the judgment must not injuriously affect the subsequently acquired rights of innocent third persons.

"But it is uniformly held that delays caused by the party whose death occurs after verdict and before judgment will not affect the right to such a judgment; as, for example, where he moves for judgment notwithstanding the verdict, moves in arrest of judg-

ment, or moves for a new trial, and dies pending a hearing on the motion. So, also, delays caused by the court will not defeat the right to a judgment *nunc pro tunc*, as where the court takes a motion under advisement and a party dies pending a decision.''

It is urged by the respondent that there were unnecessary delays, chargeable to appellants, in the prosecution of this appeal. It appears, however, from the record, that whatever delay occurred was consented to by the respondent, although, under the circumstances, this consent would not necessarily imply a specific waiver of the right to raise the present issue; but we think, independently of this, the respondent's motion should not prevail. All of the delay incident to the appeal had its inception, of course, in respondent's motion for judgment notwithstanding the verdict and the granting of it by the trial court.

Where it is found that the trial court improperly granted a judgment notwithstanding the verdict, it would be an unjust rule that would deny appellant relief as of the date of the submission of the motion, and we so held in *Garrett v. Byerly, supra.*

It is said by the supreme court of the United States in *Mitchell v. Overman,* 103 U. S. 62:

''In such cases, upon the maxim *actus curiae neminem gravabit,*—which has been well said to be founded in right and good sense, and to afford a safe and certain guide for the administration of justice,—it is the duty of the court to see that the parties shall not suffer by the delay. A *nunc pro tunc* order should be granted or refused, as justice may require in view of the circumstances of the particular case. These principles control the present case. Stutzman was alive when it was argued and submitted. He was entitled at that time, or at the term of submission, to claim its final disposition. A decree was not then entered because the case, after argument, was taken under advisement. The delay was altogether the act

of the court. Its duty was to order a decree *nunc pro tunc*, so as to avoid entering an erroneous decree.''

The motion to abate and dismiss is denied.

On the merits, we think the appellants made a case for the jury on the issue of gross negligence. As we have seen, the appellants testified that, prior to entering the intersection, the respondent had driven carefully, and it is argued here that whether he was guilty of gross negligence is to be determined, not alone by the single act resulting in the collision, but by his manner of driving as a whole—in other words, that a single act of neglect or inattention should not be characterized as gross negligence. But we think the degree of his negligence must be determined by what he did at the intersection, resulting in the collision.

The accident occurred at 10:45 p. m. The night, however, was clear and the vision on the roadway unobstructed for several hundred feet. The ''SLOW'' sign three hundred feet to the north was a warning signal of danger at the intersection. Respondent could see the headlights of the Hendricks car. He proceeded southerly to about the center line of the Ballard road before turning into it. He thereby placed his guests in a position of peril, and assuming, as Lucich testified, that he made an effort to swerve his car to the right when within five or ten feet of the other car, this did not necessarily exculpate him from the charge of gross negligence for having placed his car in the position of peril. We do not think that the effort at the last minute to extricate himself from the position in which his negligence had placed him, is the ''slight care'' meant by our rule that gross negligence is the absence of slight care.

"We have had occasion recently to point out that a driver of an automobile may not exculpate himself of the charge of gross negligence, as a matter of law, by showing that he did everything possible to extricate himself from a position of peril which was created by his own wantonly reckless conduct. *Lewis v. Sussman,* 173 Wash. 480, 23 P. (2d) 883; *Dye v. Seattle,* 173 Wash. 515, 24 P. (2d) 67. Where the driver of an automobile, in attempting to overtake and pass a vehicle going in the same direction, collides with an oncoming car, the question of gross negligence is for the triers of fact. *Adair v. Newkirk,* 148 Wash. 165, 268 Pac. 153. When a driver makes such an attempt, it is 'Hobson's choice.' He assumes the responsibility for the perilous situation which may be created." *Devereaux v. Blanchard,* 174 Wash. 673, 26 P. (2d) 82.

The jury were not required to believe respondent's testimony that the front wheels of his car wobbled before the collision, being that of an interested witness. *Thomas v. Adams,* 174 Wash. 118, 24 P. (2d) 432; *Taber v. Bauer,* 173 Wash. 96, 21 P. (2d) 1028.

The judgments of the trial court are reversed, and the cases remanded with direction to enter judgments upon the verdicts *nunc pro tunc* as of December 16, 1933, the date upon which the motions for judgments notwithstanding the verdicts were made.

MAIN, TOLMAN, STEINERT, and BEALS, JJ., concur.