[No. 37227. En Banc. November 10, 1965.]

E. C. NIST et al., Appellants, v. ANTHONY J. TUDOR et al., Respondents.*

*Reported in 407 P.2d 798.

*John J. Keough* (of *Colvin & Williams*), for appellants.

*Arthur R. Hart* (of *Martin, Shorts & Bever*), for respondents.

HALE, J.—The collision between a truck and automobile September 9, 1960, seriously injured Margaret L. Nist, jeopardized a friendship between neighbors, and impelled this court to make another study of gross negligence.

It was a bright summer morning when Margaret Nist set out with Crystal M. Tudor, her friend and neighbor, as a passenger in the Tudor car to go bean picking at the Umbedock farm. The farm was located between Kent and Renton on the west side of the East Valley Highway and could be reached by turning west off the highway onto a dirt road or lane leading to the bean fields.

Taking a circuitous route to avoid heavy morning traffic, with Mrs. Tudor at the wheel and Mrs. Nist in the front seat beside her, they entered upon the East Valley Highway and drove north. About 500 feet before reaching the dirt road where she intended to turn left, the highway, level and dry, ran straight for more than a mile toward the north. Mrs. Tudor slowed the car, and in the far distance observed a truck coming toward her from the north but she did not take note of its speed. She turned on the blinker

light signal for a left turn and in her rear view mirror saw a car pulling out behind her to pass. Moving ahead very slowly with her left-turn blinker signal on, she waited a second or two after the following car went by and then, turning abruptly to the left, drove toward the dirt road across the highway into the path of the oncoming truck. The truck was only 15 or 20 feet away when Mrs. Tudor saw it bearing down upon her and, too late for either driver to change course, the truck crashed into the right side of the Tudor car, seriously injuring Mrs. Nist.

Mrs. Nist, as a guest passenger, brought this action against Mrs. Tudor alleging gross negligence. At the close of the plaintiffs' case, the trial court sustained defendants' challenge to the sufficiency of the evidence, ruling as a matter of law that defendants' actions did not constitute gross negligence under the host-guest statute. RCW 46.08-.080. Giving a literal interpretation to our frequently expressed statement that gross negligence means the failure to exercise slight care (*Crowley v. Barto,* 59 Wn.2d 280, 367 P.2d 828 (1962); *Eichner v. Dorsten,* 59 Wn.2d 728, 370 P.2d 592 (1962)), the trial court construed the statement to mean that, if the defendant driver exercised any care at all for the safety of her guest passenger, the passenger could not recover. Thus, in the court's opinion, when Mrs. Tudor slowed her car to a near stop and waited for a following car to pass before making her left turn, and gave a left-turn signal, she was exercising sufficient care to negate a finding of gross negligence.

From a judgment of dismissal entered on a challenge to the sufficiency of the evidence, plaintiffs appeal.

The idea that the driver of an automobile owes less than ordinary care to his guest passenger and, therefore, is not liable to him short of gross negligence, originated in this state with the courts and not with the legislature and has its genesis in the law of bailments where it is the rule that a gratuitous bailee is without liability unless grossly negligent. *Bradford-Kennedy Co. v. Buchanan,* 91 Wash. 539, 158 Pac. 76 (1916), cited with approval in *Saxe v. Terry,* 140 Wash. 503, 250 Pac. 27 (1926); *Altman v. Aron-*

*son*, 231 Mass. 588, 121 N.E. 505, 4 A.L.R. 1185 (1919). Thus, the legislature adapted from the courts a principle that an automobile driver owes the same duty of care for the safety of his passengers as he does for a borrowed lawnmower— a rule conceived long before the advent of the automobile.

When the legislature enacted Laws of 1961, ch. 12, § 46.08.080, p. 250, it did not amplify this concept of gross negligence:

> No person transported by the owner or operator of a motor vehicle as an invited guest or licensee, without payment for such transportation, shall have cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless the accident was intentional on the part of the owner or operator, or the result of said owner's or operator's gross negligence or intoxication, and unless the proof of the cause of action is corroborated by competent evidence or testimony independent of, or in addition to, the testimony of the parties to the action: *Provided,* That this section shall not relieve any owner or operator of a motor vehicle from liability while it is being demonstrated to a prospective purchaser.

A review of the commentaries, scholarly treatises and case law[1] on gross negligence shows the term to have universally escaped definition, and despite the most assiduous efforts to give it precision it retains its amorphous quality. Every qualifying word added to sharpen the phrase seems to obscure in about the same degree as it clarifies it and inevitably invites further definition. Or, standing alone in its self-contained significance, great negligence, the idea remains extremely difficult for the trial courts to apply in specific situations. The problem ever remains: Was there sufficient proof of great negligence to submit the issue to the jury? Our cases show the trouble the courts have in answering this query.

In *Saxe v. Terry, supra,* where, on a dark night, the driver, knowing he would shortly enter another curve, took one turn so fast as to evoke a comment from his passenger and

[1] 18A Words & Phrases 518, *et seq.* (Perm. ed.).

went into a ditch on the second curve, this court reversed a judgment entered on a plaintiff's verdict and held as a matter of law that, although there was evidence of negligence, there was no evidence of gross negligence. Similarly, where a driver parked his truck illegally upon the traveled portion of the roadway in violation of a statute, being thus negligent as a matter of law, and refused to move his truck at a signal from another truck approaching from the rear, he too, as a matter of law, was not grossly negligent. *Klopfenstein v. Eads*, 143 Wash. 104, 254 Pac. 854, 256 Pac. 333 (1927).

Following closely in time and citing the preceding cases, *Blood v. Austin*, 149 Wash. 41, 270 Pac. 103 (1928), declared again, "As to an invited guest one is required to exercise only slight care and will be liable only for gross negligence." Evidence that driving in the center of and along an icy, chuckholed road covered with loose gravel, at 30 to 40 miles per hour into a clearly posted curve, did not as a matter of law supply evidence of gross negligence when the car went off the highway through a railing on the left of the road, even though the passengers had several times warned the driver to slow down.

In *Dailey v. Phoenix Inv. Co.*, 155 Wash. 597, 285 Pac. 657 (1930), this court reversed a plaintiff's judgment for injuries to a guest passenger. Just before entering a curve, the driver drove 40 miles per hour at night, overtaking and passing two cars going in the same direction. The car left the road at a turn into an intersecting road, crashing and injuring the guest passenger. We held as a matter of law that the evidence did not show gross negligence. Similarly: *Lothspeich v. Morrell*, 173 Wash. 55, 21 P.2d 287 (1933); *Dawson v. Foster*, 169 Wash. 516, 14 P.2d 458 (1932); *Connolly v. Derby*, 167 Wash. 286, 9 P.2d 93 (1932); *MacDonald v. Balletti*, 164 Wash. 595, 4 P.2d 506 (1931); and *Craig v. McAtee*, 160 Wash. 337, 295 Pac. 146 (1931).

Although retaining slight care as a standard, this court has in recent years, where there is substantial evidence of acts or omissions seriously negligent in character, inclined toward leaving the question of gross negligence to the jury.

Thus in *Devereaux v. Blanchard*, 174 Wash. 673, 26 P.2d 82 (1933), we held that, where the driver of an automobile in attempting to pass a truck going in the same direction collides with an oncoming car, the question of gross negligence is for the trier of the facts, citing *Adair v. Newkirk*, 148 Wash. 165, 268 Pac. 153 (1928), with approval.

Again, in *Pickering v. Stearns*, 182 Wash. 234, 46 P.2d 394 (1935), where the car left the highway, either swerving to the left or continuing straight when the road curved right and there was no proof of negligence except the driver's out of court statements that he might have fallen asleep, we allowed the jury to find gross negligence, even though the driver speculated that he struck a boulder but testified categorically that he had not fallen asleep. And, in *Nenezich v. Elich*, 183 Wash. 657, 49 P.2d 33 (1935), the evidence of negligence in failing to slow down sufficiently at a "Slow" sign before turning off into an intersecting road was deemed sufficient to create an issue of fact for the jury as to gross negligence. Similarly, in *Eichner v. Dorsten*, 59 Wn.2d 728, 370 P.2d 592 (1962), where the host, driving a station wagon carrying 22 teen-age girls as passengers, attempted to cross a four-lane highway and failed to stop in the center refuge or island before crossing the two westbound lanes, we held it a question for the jury to decide if the evidence of negligence warranted a finding of gross negligence.

*Sullivan v. Watson*, 60 Wn.2d 759, 375 P.2d 501 (1962), confirms the idea that conduct may be either gross negligence, ordinary negligence or non-negligence, depending on the jury's view of the facts. There the host driver, proceeding on a four-lane street, struck the right curb, veered diagonally across the four lanes to hit the left curb, zigzagged back and forth, narrowly missing two head-on collisions, and finally rammed a concrete foundation and hit a house and telephone pole. We held that both the defense of unexpected mechanical failure urged by the driver and the question of gross negligence derived from the car's erratic course presented questions of fact for the jury. We did not hold, as respondent would have us rule

in the present case, that the quantum of care exercised in keeping the car in its lane up to the moment it touched the right curb constituted as a matter of law more than the slight care necessary to avoid the stigma of gross negligence.

Then, in *Emery v. Milk*, 62 Wn.2d 617, 384 P.2d 133 (1963), where the host driver demonstrated a number of the elements of care by driving in her proper lane with her lights on, keeping her car under control, we said that failure to stop at a stop sign and yield the right of way in driving through an obstructed intersection provided evidence of gross negligence, creating an issue of fact for the jury. The elements of care shown in controlling and operating the car did not cancel the elements of gross negligence implicit in driving across an obstructed arterial street at 30 miles per hour without stopping.

Cases where the driver causes injury to his guest passenger in failing to negotiate a curve usually treat the question of gross negligence as one for the jury. In *Meath v. Northern Pac. R.*, 179 Wash. 177, 36 P.2d 533 (1934), we said:

> [W]here the driver of an automobile approaches a curve, knowing the condition of the roadway thereat, at such speed that he cannot make the turn, and the automobile leaves the road, the jury may find him guilty of gross negligence. *Welch v. Auseth*, 156 Wash. 652, 287 Pac. 899; *Gough v. Smalley*, 160 Wash. 193, 294 Pac. 1007;
> . . . .

We affirmed this statement recently in *Tyler v. Tyler*, 65 Wn.2d 102, 395 P.2d 1021 (1964), when the driver, in approaching a familiar curve at between 25 and 30 miles per hour in a 25 mile-per-hour zone, accelerated to 35 or 40 miles per hour to avoid the necessity of shifting gears on the rather steep hill. We said that this presented evidence from which a jury could find gross negligence where the driver lost control and the car left the highway and rammed into a tree.

Thus, although the definition of gross negligence as the failure to exercise slight care has remained constant, its ap-

plication has not been uniform. In some instances, negligence, which has been declared insufficient to constitute gross negligence as a matter of law, has been held in similar cases to create an issue of gross negligence for the jury. Other jurisdictions share our predicament.

Even a cursory review of the literature and case law shows the same uncertainty in applying the gross negligence standard to given facts and demonstrates that the profession at large has undertaken the impossible task of defining the indefinable. For example, *Dinardi v. Herook*, 328 Mass. 572, 105 N.E.2d 197 (1952), attempts to separate gross negligence from ordinary negligence in automobile accidents on the basis of the number of seconds that the driver is guilty of inattention by comparing them with instances showing longer periods of inattention. *Williamson v. McKenna*, 223 Ore. 366, 354 P.2d 56 (1960), probably as scholarly and comprehensive a study of gross negligence as has been made by any court since the advent of the automobile, setting forth a state-by-state analysis, illustrates the difficulty of formulating a workable definition.

That gross negligence has different connotations in different jurisdictions may be seen in the statements from academic authorities. Prosser on Torts § 33, p. 147, 148 (2d ed. 1955); Prosser on Torts § 77, p. 445, 451 (2d ed. 1955); Prosser on Torts § 34, p. 183, 187 (3d ed. 1964); 38 Wash. L. Rev. 357; 4 Blashfield, Cyclopedia of Automobile Law and Practice § 2322, p. 370, 375; Mirabel & Levy, Law of Negligence § 372, p. 510; 2 Harper & James, Law of Torts, § 16.15, p. 950; Harper, Law of Torts § 74, p. 170. Commencing with the easiest proposition to apply, that there is no legal difference between negligence and gross negligence save the epithet *gross* (Harper, Law of Torts § 74, p. 170, 171), followed by valiant efforts to definitively classify negligence into three categories—slight, ordinary and gross—the literature expands into such other concepts as wanton and willful misconduct, reckless misconduct, misconduct evincing a reckless disregard of the safety of others, and actions evincing a state of mind showing indifference to the safety of one's guest. Elsewhere, added

descriptive terminology includes such ideas as an utter disregard of prudence, amounting to complete neglect of the safety of the guest or a conscious indifference to his rights or welfare. *Cutler v. Gulf States Util. Co.*, 361 S.W.2d 221 (Tex. Civ. App. 1962); *Atwell v. Watson*, 204 Va. 624, 133 S.E.2d 552 (1963). These are but a few examples of the ideas urged upon the trial court when it comes to putting the question to the jury.

Other theories base the distinction between ordinary and gross negligence on the actor's state of mind and include willful, wanton and reckless misconduct—short of intent to do harm—and some regard the latter as a failure to exercise that care which even a careless person would use.

Where gross negligence is employed in a statute, the courts cannot avoid its nebulous qualities by substituting a different standard for it nor can they avoid the term altogether as does the Restatement (Restatement, Torts § 500, p. 1293), which measures the actor's conduct in ratio to the quantum of harm implicit in the circumstances. Although the Restatement's handling of this problem may be preferable, this court must, under RCW 46.08.080, supply a workable means by which the trial court and jury may apply gross negligence to concrete situations.

We have many times said that failure to exercise slight care is gross negligence within the meaning of the motor vehicle statutes. Since this statement seems as appropriate in describing the concept as the other definitions offered, we should amplify the definition so that it may be more readily applied by the trial courts in given situations.

Gross negligence may be more readily understood if anchored to or guided by other more understandable concepts, and ought to be directly related to the hazards of the occasion in which it is invoked. *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253 (1928). A gentle push of one window washer by another may be merely a playful gesture and of only the slightest negligence when both are standing in a basement window well, but put the same two men on the window ledge of a sky-

scraper, 30 stories above the ground, and the same playful gesture becomes an act of the grossest negligence, if not one of wanton depravity.

The term *gross negligence*, then, to have practical validity in the trial of a cause, should be related to and connected with the law's polestar on the subject, ordinary negligence. Circumstances surrounding the actors largely determine the quantum of care required in any rule referring to or prescribing standards of care, unless the statutes declare otherwise. That the courts customarily recognize the effect of surrounding circumstances may be seen from the law's classic definition of ordinary negligence, *i.e.*, negligence is the act or omission which a person of ordinary prudence would do or fail to do under *like* circumstances or conditions; it is that degree of care which the reasonably prudent person would exercise in the same or similar circumstances. Gross negligence, being a form of negligence on a larger scale, must also, like ordinary negligence, derive from foreseeability of the hazards out of which the injury arises.

It means, therefore, gross or great negligence, that is, negligence substantially and appreciably greater than ordinary negligence. Its correlative, failure to exercise slight care, means not the total absence of care but care substantially or appreciably less than the quantum of care inhering in ordinary negligence. In determining the degree of negligence, the law must necessarily look to the hazards of the situation confronting the actor.

Although Mrs. Tudor, the driver, had slowed her car to a near stop, had her left-turn blinker signal on to warn following cars and waited for them to go by, her negligence, if any, should therefore, be measured in the case not by dangers from following cars but from the hazards whereof plaintiff received her injuries—the oncoming truck. Any care or prudence exerted by the defendant driver here had reference to following cars and little or no relationship to the hazards generated by the approaching truck, for the truck had the right of way, and the duty to yield rested upon the Tudor car before making its left turn.

Neither slowing down, nor signaling, nor looking toward a truck coming toward her on a clear, dry day on a straight, level road reduced the hazards from so imminent and perceptible a danger unless her actions suited the needs of the occasion. Her acts and omissions in turning suddenly into so obvious a danger supplied evidence from which a jury could well infer that she acted in the exercise of so small a degree of care under the circumstances as to be substantially and appreciably more negligent than ordinary, and hence could be held guilty of gross or great negligence.

■ Without suggesting the order or content of the instructions, we discern a few guidelines in determining when and how the issue of gross negligence under the host-guest automobile statute may be submitted to the jury. First, there can be no issue of gross negligence unless there is substantial evidence of serious negligence. If there is substantial evidence of seriously negligent acts or omissions on the part of the host driver, then the issue of gross negligence should be resolved by the jury under proper instructions.

Ordinary standards of care customarily thought as governing the relationships between persons have been changed by statute when the relationship is that of host driver and guest passenger. The nature and legal effect of such change should, in the interest of clarity, be pointed out to the jury. We held the language of the statute sufficient for this purpose in *Osborn v. Chapman*, 62 Wn.2d 495, 384 P.2d 117 (1963), but do not, of course, declare this to be the exclusive method by which the relationship and standard of care are described.

Because gross negligence is a species of aggravated negligence, the jury should have an understanding of what the law means by ordinary negligence so that it may have a basis of comparison; consequently, the jury should be given the benefit of the law's classic definition of negligence coupled with the definition of and the rule concerning proximate cause. The jury should also be told that the plaintiff has the burden of proving gross negligence as the proxi-

mate cause of the injuries by a preponderance of the evidence, and it should, likewise, be made clear that the plaintiff cannot recover on proof of negligence but must prove the defendant guilty of gross negligence.

Finally, we believe the jury—having received the classic definition of ordinary negligence—will better understand the idea of gross negligence if it is informed that gross negligence means what the term implies—great negligence, negligence substantially or appreciably greater than ordinary negligence.

The judgment is therefore reversed and the cause remanded for a new trial in accordance with this opinion.

HILL, FINLEY, WEAVER, OTT, HUNTER, and HAMILTON, JJ., concur.

ROSELLINI, C. J. (dissenting in part)—I agree with the majority that there must be a new trial because the trial court erroneously dismissed the case.

It is evident from the memorandum opinion that the trial court considered the defendant's exercise of care with regard to the vehicles behind her determinative of the issue of gross negligence. Of course, this accident was not caused by the defendant's failure to exercise care with regard to a vehicle passing her, but rather by her failure to yield the right of way to an approaching vehicle. Her testimony was that she observed the approaching truck in the distance. She could not estimate its speed, but assumed that she had plenty of time to make the turn.

Tending to refute an implication that the truck was traveling at an excessive speed was the fact that it stopped in a very short distance after the collision. I do not think it can be said as a matter of law that the defendant exercised some (slight) care in making the turn or none at all. The jury might well find that the defendant, being aware that a truck was approaching and that time had elapsed since she had noted its position, was guilty of gross negligence in attempting to execute a turn without looking again to ascertain its position—in other words, that she failed to exercise even slight care.

However, I dissent to that portion of the majority opinion which attempts to "clarify" the definition of gross negligence. To my mind, the term was defined in clear and understandable language in *Crowley v. Barto*, 59 Wn.2d 280, 367 P.2d 828. There we said that when the legislature, in 1957, amended Laws of 1937, ch. 189, § 152, the host-guest statute, to provide for liability where the host is guilty of gross negligence, it meant to accord to the term the same meaning as the court had given it prior to the enactment of the first host-guest statute in 1933. That meaning was "the want or absence of slight care."

Incidentally, in passing, I do not find in my research any indication that the court originally adopted the rule that a host is liable to his nonpaying passenger only when he is guilty of gross negligence by drawing an analogy to the law of bailments. The cases cited by the majority for this proposition do not support it; and a reading of the early case of *Heiman v. Kloizner*, 139 Wash. 655, 247 Pac. 1034 discloses that the rule was adopted upon a much broader analogy. In that opinion, this court said:

> Varying degrees of negligence, or varying degrees of required care, if one prefers to have the proposition so stated, touching the question of liability rested upon the ground of negligence, have been repeatedly recognized by us as a practicable working principle of the law of this state. [Citing cases.] We do not mean by this that varying degrees of negligence or required care have been or can be differentiated with any sort of precision. Only that differing situations, conditions and relations call for differing degrees of care.

Having then observed that one should not be required to exercise as high a degree of care in carrying an invited but nonpaying passenger as he should be required to exercise in carrying a passenger for hire, we chose a Massachusetts case, *Massaletti v. Fitzroy*, 228 Mass. 487, 118 N.E. 168, L.R.A. 1918C 264, as embodying one of the most exhaustive examinations of the question to be found and quoted from it at length. A portion of that quotation is as follows:

> "[J]ustice requires that to make out liability in case of a gratuitous undertaking the plaintiff ought to prove a

materially greater degree of negligence than he has to prove where the defendant is to be paid for doing the same thing. It is a distinction which seventy-five years' practice in this Commonwealth has shown is not too indefinite a one to be drawn by the judge and acted upon by the jury."

While this court did not at that early stage adopt the definition of gross negligence as "absence of slight care," it planted the seeds from which that definition later sprang. However, the language of the authorities quoted in that opinion could well have supported a different statement of the rule, namely, that the care required is reasonable care under the circumstances; and if I were the legislative body, that is the standard I would impose. But that is. not my function as a judge of the supreme court. It is to interpret and apply a legislative act.

This observation leads me back to the gist of my dissent. The conclusion I derive from a reading of the majority opinion is that, in their attempt to redefine gross negligence, the majority have expanded the area of liability beyond that intended by the legislature. We have said that the legislature intended to adopt the meaning previously ascribed to the term by this court, namely, the absence of slight care.

My Webster's New Twentieth Century Dictionary, third edition, defines slight as "scanty, meager." I conceive of slight care as an amount so small that any amount smaller would amount to no care at all. Yet the majority seem to recognize the possibility of a degree of care which is greater than none, but less than slight. If this degree is exercised, they say, it is not sufficient to deliver the actor from liability for gross negligence. A degree of care which is so small that it can fit between "slight" and "none" is imperceptible.

The majority says:

It [gross negligence] means, therefore, gross or great negligence, that is, negligence substantially and appreciably greater than ordinary negligence. Its correlative, failure to exercise slight care, means not the total absence of care but care substantially or appreciably less than the quantum of care inhering in ordinary negligence.

"The quantum of care inhering in ordinary negligence" is a concept unfamiliar to me, but I will assume that the meaning of this expression is the quantum of care, the failure to exercise which constitutes ordinary negligence.

While at first blush it would seem that the majority have conjured up a quantity of care which is less than slight, as the term is ordinarily understood, I think that the actual and practical effect of the opinion may be simply to enlarge the concept of "slight" or, in other words, to increase the quantity of care which may be termed "less than slight but more than none." Thus, the point of differentiation between gross and ordinary negligence becomes blurred. For example, if a host exercises one-third the amount of care a person with ordinary prudence would exercise or one-half or maybe even two-thirds, the majority would say that the jury may in each case find that this amount was less than "slight" under the circumstances, and, therefore, the host was guilty of gross negligence.

The true import of the majority opinion seems to be that the jury should be allowed to determine whether the host exercised reasonable care under the circumstances. That may be a fine rule of law, but it is not the one adopted by the legislature.

The legislature has said that a host need not exercise much care for the safety of his nonpaying passenger. He may not deliberately harm him, or recklessly harm him; but if he is sober and exercises a very little bit of care, he cannot be held liable. It is not for this court to evaluate the wisdom of this legislative enactment or to revise it.

I do not think the concepts of "great negligence" and "serious negligence" are any more understandable than the concept of "gross negligence." In fact, it seems to me that both those terms are less precise than "gross." If gross negligence, a term which in itself should convey a fairly clear meaning to the average mind, is further defined as "the absence of slight care," I think a jury should not have any difficulty in understanding it. It means simply that, where the situation called for the exercise of care, none was exercised. Not that a deliberate wrong was done, or that

the actor moved with "reckless disregard of the consequences" into a dangerous situation [We said in *Crowley v. Barto, supra,* that this involved a certain willfulness.], but that he failed, through inattention or indifference, to do any act which care would have required under the circumstances.

I fear that the majority opinion injects new elements of vagueness and uncertainty into the concept and may result in greater confusion among judges, lawyers and juries. I would forego the temptation to "clarify" the definition and leave well enough alone.

DONWORTH, J., concurs with ROSELLINI, C. J.