[No. 37259. Department Two. January 6, 1966.]

KARRAN ANNA SATER, *Respondent,* v. RONALD WILBUR OWENS
*et al., Appellants.*\*

*Davies, Pearson, Anderson & Pearson,* by *Wayne J. Davies,* for appellants.

*Frank P. Girolami,* for respondent.

\*Reported in 409 P.2d 660.

LANGSDORF, J.†—This is a lawsuit under the host-guest statute, RCW 46.08.080. Plaintiff (respondent), a guest passenger, recovered a judgment for personal injuries sustained in a one-car accident. The case was tried to the court, without a jury.

On the 25th day of August, 1962, the plaintiff Karran Sater and the defendant Ramona Owens went to the Playboy Tavern in Tacoma for an evening of social activities. At the tavern they met two soldiers with whom they drank beer and danced. At 1:30 a. m., they drove the soldiers to Fort Lewis in the 1960 Renault 4-door automobile. At the Fort, the defendant was told by one of the soldiers that she looked tired and she herself admitted that she was sleepy. At approximately 2:30 a. m., the two women headed back to Tacoma, the defendant driving, with the plaintiff asleep on the back seat.

The road was dry and, while driving north on U. S. Highway 99 (a new six-lane high-speed freeway), the defendant noticed that she was getting sleepy and testified that her eyes had closed at least twice before the accident occurred. She rolled the front window down and opened the wing to get some fresh air to keep her awake, but closed the window soon afterward because she was cold. She then apparently fell asleep at the wheel; the car left the middle lane of travel, struck a guardrail, and turned over.

A Washington State Patrolman arrived shortly after the accident. He testified that the car had rolled over and was totally demolished. He further testified that there were no skid marks, no sign of tire blowout and no evidence of a collision with another vehicle. He also related a conversation he had with the defendant at the scene of the accident, prior to putting her in the ambulance. Defendant told him that she had fallen asleep. This conversation took place while defendant was dazed and in a state of shock.

The trial court found that the actions of the defendant constituted gross negligence and awarded plaintiff a judg-

†Judge Langsdorf is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

ment in the amount of $5,000 for special and general damages.

Appellants make the following assignments of error. (1) That the trial court erroneously concluded that appellant's actions constituted gross negligence. (2) That the trial court erroneously concluded that the evidence was corroborated as required by the host-guest statute RCW 46-.08.080.[1]

Appellants argue, as to the first assignment of error, the fact that the driver rolled down her window to give herself fresh air. They contend that this is uncontradicted evidence of slight care. Gross negligence being, by definition, absence of even slight care, they argue the trial court was wrong as a matter of law in finding for the respondent on this issue.

Gross negligence has recently been amplified by this court. In *Nist v. Tudor, ante* pp. 322, 331, 407 P.2d 798 (1965), the court stated as follows:

> Gross negligence, being a form of negligence on a larger scale, must also, like ordinary negligence, derive from foreseeability of the hazards out of which the injury arises.
>
> It means, therefore, gross or great negligence, that is, negligence substantially and appreciably greater than ordinary negligence. Its correlative, failure to exercise slight care, means not the total absence of care but care substantially or appreciably less than the quantum of care inhering in ordinary negligence. In determining the degree of negligence, the law must necessarily look to the hazards of the situation confronting the actor.

■ Under this definition, the trial court could have found that rolling down a window for a few minutes and

---

[1] "No person transported by the owner or operator of a motor vehicle as an invited guest or licensee, without payment for such transportation, shall have cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless the accident was intentional on the part of the owner or operator, or the result of said owner's or operator's gross negligence or intoxication, and unless the proof of the cause of action is corroborated by competent evidence or testimony independent of, or in addition to, the testimony of the parties to the action: *Provided,* That this section shall not relieve any owner or operator of a motor vehicle from liability while it is being demonstrated to a prospective purchaser." RCW 46.08.080.

then rolling it up in the light of a known tendency towards drowsiness is appreciably less than the amount of care inherent in ordinary negligence. Appellant admittedly knew she was sleepy and yet continued to drive. Her one attempt to relieve her sleepy condition was totally vitiated when she rolled her window closed. This made the interior of the car warmer, a condition conducive to sleep. Appellant chose warmth rather than her personal safety and the safety of her passenger. In these circumstances, we will not overturn the findings of the trial court.

On the second assignment of error, appellants claim that all the evidence aimed at corroboration of the accident, as required by RCW 46.08.080, was just repetition of the testimony of the parties and that no testimony in proof of the cause of action was introduced. We cannot agree with this contention.

■ It is not necessary that all the evidence introduced be corroborated. *Trudeau v. Haubrick*, 65 Wn.2d 286, 396 P.2d 805 (1965), stated that "RCW 46.08.080 does not require every bit of evidence to be corroborated. It is only requisite that '. . . the proof of the *cause of action* is corroborated by competent evidence or testimony independent of, or in addition to, the testimony of the parties to the action: . . .'" Therefore, this requires that there be independent proof that the accident occurred due to appellant driver's falling asleep and leaving the road. We feel that the testimony of Officer Jelsing of the Washington State Patrol was sufficient to meet this requirement. Officer Jelsing testified that he arrived on the scene soon after the accident happened. He found no skid marks, or tire failure or any indication that another vehicle was involved. He found no irregularity in the surrounding highway. One can conclude that the accident occurred in the manner described by the appellant. In *Tyler v. Tyler*, 65 Wn.2d 102, 395 P.2d 1021 (1965), the testimony of the investigating officer as to the speed of the vehicle based on his investigation of the physical facts of the accident was considered corroborating evidence of the testimony of the parties.

 Officer Jelsing further testified that the appellant, while dazed and in a state of shock, told him she fell asleep and drove off the road. This is not mere repetition of the testimony of a party to the action, but is part of the res gestae. *Beck v. Dye,* 200 Wash. 1, 9, 92 P.2d 1113, 127 A.L.R. 1022 (1939), sets out the requirements for considering a statement part of the res gestae as follows:

(1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact, and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation, and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made.

The statement made by the appellant to State Patrolman Jelsing meets these requirements and was admitted into evidence on this basis. In *Beck, supra,* page 10, a res gestae statement was characterized in the following manner:

The term *"res gestae"* is not a mere shibboleth by an indiscriminate use of which every unsworn statement made during a particular transaction or occurrence is to be admitted. It is a doctrine which recognizes that, under certain circumstances, a declaration may be of such spontaneous utterance that, metaphorically, it is an event speaking through the person, as distinguished from a person merely narrating the details of an event.

This clearly places a res gestae statement above mere repetition and makes it part of the event itself. Thus it can well serve as corroboration of the testimony of a witness. It must be remembered that the purpose of the cor-

roboration requirement was to prevent friends from concocting a story to defraud a defendant's insurer. Statements are admitted under res gestae only when requirements (previously outlined) set up to guarantee the truthfulness of the statements can be met. We find that there was more than enough evidence to corroborate the testimony of the parties.

The judgment is affirmed.

ROSELLINI, C. J., FINLEY, WEAVER, and HUNTER, JJ., concur.