[No. 58854-1-I. Division One. July 23, 2007.]

SERENA L. WHITEHALL, *Individually and as Guardian*, *Appellant*, v. KING COUNTY ET AL., *Respondents*.

*Thaddeus P. Martin IV*, for appellant.

*Daniel T. Satterberg, Interim Prosecuting Attorney*, and *Kristofer J. Bundy, Deputy*, for respondents.

¶1 BAKER, J. — Serena Whitehall sued King County (County), asserting that it negligently failed to properly supervise a misdemeanant who caused her serious injuries while on probation. Whitehall appeals the trial court's grant of summary judgment to the County. We affirm.

I

¶2 Kelly Vomenici participated in the staged robbery of a convenience store, which netted less than $250. A friend of Vomenici's had flashed an unloaded gun so that it would appear on the store's security cameras that the clerk, who participated in the scheme, had been forced to hand over the money.

¶3 Vomenici pleaded guilty to third degree theft. The prosecutor's understanding of Vomenici's criminal history showed that Vomenici had one adult misdemeanor for DUI (driving under the influence) and two juvenile misdemeanors: one for fourth degree assault and one for possession of alcohol. On October 27, 2000, the court sentenced Vomenici to 12 months' probation and ordered him to perform 120 hours of community service. The court also ordered him to have no contact with his accomplices, commit no criminal offenses, and pay offense-related costs.

¶4 Vomenici reported to the Department of Corrections (DOC) the day he was sentenced. He signed the department's standardized form containing general instructions for probationers. Approximately two weeks after Vomenici was sentenced, a copy of his judgment and sentence was received by King County District Court Probation Services Division. By the terms of a contract between the DOC and the County, supervision of Vomenici passed to the County upon receipt of the judgment and sentence.

¶5 During the next year while Vomenici was under the County's probation supervision, he regularly reported to his probation officers and made progress on his community service obligation. He had no reported new arrests or convictions, but because he made no progress in paying his financial obligations, he agreed to a seven month extension of his probation.

¶6 The level of supervision followed by the County's probation department for a misdemeanant probationer such as Vomenici did not include home visitations or field investigations, and none were performed. Vomenici's probation officers observed no behavior that raised any concern that Vomenici was likely to cause harm or to commit acts of violence against others.

¶7 In October 2001, Vomenici's girl friend, Jessica Gravis, told him that she had been beaten up by one Nick Haskins. Vomenici was determined to exact revenge on Haskins. His first thought was to beat up Haskins in return. When he failed to find Haskins, Vomenici settled on a plan to blow up Haskins' car with an illegal firework he had purchased. The firework he intended to use was approximately four to five inches in length and a bit less in diameter than a toilet paper roll.

¶8 On October 13, Vomenici drove past the trailer where Haskins lived with Serena Whitehall. There was no car in the driveway, but Vomenici was determined to do something to express his displeasure with Haskins. Seeing that the lights in the trailer were off and the blinds were down, he decided nobody was home. He lit the fuse on the explosive and placed it on the doorknob, intending to blow the door off its hinges. He got back into his car and drove away before the device exploded.

¶9 Vomenici was mistaken in his assumption that the trailer was unoccupied. Serena Whitehall and her young daughter, Amber, were inside the trailer. Whitehall saw Vomenici walking up the driveway. As she watched, Vomenici came to the door, then ran off, stopping once to look back.

¶10 Whitehall opened the door, and the explosive Vomenici had placed on the doorknob fell to the floor of the porch. She picked it up, intending to throw it away from the trailer, when it went off in her hand. Whitehall lost the majority of her right hand and sustained numerous shrapnel injuries on her chest, stomach, and legs.

¶11 Vomenici was arrested later that same day. Police searched his trailer at the Auburn address several days later and found the remains of a marijuana grow operation and a number of guns, as well as nearly 1,000 rounds of ammunition. At least three people, including Vomenici's younger brother, lived at the Auburn address. The police were unable to determine who actually possessed the items discovered inside the trailer and concluded there was insufficient evidence to charge anyone with a crime.

¶12 Vomenici pleaded guilty to second degree assault and was sentenced to five years in prison.

¶13 Whitehall filed suit against King County, alleging that the County failed to control Vomenici during his probation. On cross-motions for summary judgment, the court granted the County's motion. Whitehall now appeals.

II

¶14 We review summary judgment de novo.[1] Summary judgment is proper if the court, viewing all facts and reasonable inferences in the light most favorable to the nonmoving party, finds no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[2]

 ¶15 Probation officers have a duty to protect third parties from reasonably foreseeable dangers that exist

---

[1] *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999).

[2] *Ellis v. City of Seattle*, 142 Wn.2d 450, 458, 13 P.3d 1065 (2000) (quoting *Trimble v. Wash. State Univ.*, 140 Wn.2d 88, 92-93, 993 P.2d 259 (2000)).

because of an offender's dangerous propensities.[3] The duty arises from the special relationship between the government and the offender.[4] The State's authority to supervise arises from the conditions of release contained in a judgment and sentence for a crime.[5] The failure to adequately monitor and report violations by the probationer may result in liability.[6] In *Taggart v. State*,[7] the court held that for purposes of the indeterminate sentencing scheme that applied to felonies committed before July 1, 1984, the duty to supervise was one of ordinary care that could be violated by ordinary negligence.[8] In 1988, at least for purposes of community placement under the Sentencing Reform Act of 1981,[9] the legislature provided that the duty is one of slight care that can be violated only by gross negligence.[10] In 1996, the legislature provided similarly for misdemeanors.[11]

¶16 Thus, the County is liable only for conduct that amounts to gross negligence in supervising misdemeanants.[12]

¶17 RCW 9.95.204(7) provides that

[t]he state of Washington, the department of corrections and its employees, community corrections officers, any county under

---

[3] *Estate of Davis v. Dep't of Corr.*, 127 Wn. App. 833, 844, 113 P.3d 487 (2005) (citing *Taggart v. State*, 118 Wn.2d 195, 224, 822 P.2d 243 (1992)).

[4] *Joyce v. Dep't of Corr.*, 155 Wn.2d 306, 318, 119 P.3d 825 (2005).

[5] *Joyce*, 155 Wn.2d at 315.

[6] *Bishop v. Miche*, 137 Wn.2d 518, 526, 973 P.2d 465 (1999).

[7] 118 Wn.2d 195, 822 P.2d 243 (1992).

[8] *Taggart*, 118 Wn.2d at 220; *Couch v. Dep't of Corr.*, 113 Wn. App. 556, 566 n.38, 54 P.3d 197 (2002) (summarizing *Taggart*).

[9] Ch. 9.94A RCW.

[10] RCW 72.09.320; *Couch*, 113 Wn. App. at 566 n.38.

[11] RCW 9.95.204(7); *Couch*, 113 Wn. App. at 566 n.38. RCW 9.95.204 was enacted with its companion, RCW 9.95.206, which covers offender classification and supervision standards.

[12] RCW 9.95.204(7); *Kelley v. Dep't of Corr.*, 104 Wn. App. 328, 332, 17 P.3d 1189 (2000).

contract with the department of corrections pursuant to this section and its employees, [and] probation officers . . . are not liable for civil damages resulting from any act or omission in the rendering of superior court misdemeanant probation activities unless the act or omission constitutes gross negligence.

¶18 RCW 9.95.204 was enacted in 1996. The act authorized counties to contract with the DOC for the supervision of misdemeanant probationers.[13] Prior to the enactment of the legislation, the majority of misdemeanant probationers were supervised by the DOC by telephone.

¶19 In 1998, King County contracted with the DOC to assume monitoring of misdemeanant probationers via the Superior Court Unit of King County District Court Probation Services Division.

¶20 Whitehall asserts that the County was negligent in its supervision of Vomenici while he was on probation, and that there is a clear linkage between the County's failure to supervise Vomenici and his assault on Whitehall. The record does not support such an assertion.

■ ¶21 The court in *Kelley v. Department of Corrections*[14] defined the "gross negligence" standard:

Gross negligence is failure to exercise slight care. But this "means not the total absence of care but care substantially or appreciably less than the quantum of care inhering in ordinary negligence." It is "negligence substantially and appreciably greater than ordinary negligence." Ordinary negligence is "the act or omission which a person of ordinary prudence would do or fail to do under *like* circumstances or conditions . . . ." There is no issue of gross negligence without "substantial evidence of serious negligence."[15]

¶22 The plaintiff in *Kelley*, Kevin Ingalls, pleaded guilty to felony rape and was sentenced to 48 months in prison

---

[13] RCW 9.95.204.

[14] 104 Wn. App. 328, 17 P.3d 1189 (2000).

[15] *Kelley*, 104 Wn. App. at 333 (alteration in original) (citations omitted) (quoting *Nist v. Tudor*, 67 Wn.2d 322, 331-32, 407 P.2d 798 (1965)).

and one year of community custody. While under supervision, Ingalls assaulted Kelley, who sued the DOC for negligent supervision. The trial court granted summary judgment for the State.[16] Kelley submitted a declaration by William Stough, who has also submitted a declaration in the present case. As in the present case, Stough opined that the community corrections officer was negligent in his supervision of Ingalls.[17]

¶23 The court held that while the community corrections officer overseeing Ingalls knew Ingalls had been drinking, had possibly violated his curfew, and had committed a crime, those lapses in supervision were not substantial evidence of serious negligence and fell short of showing gross negligence. The court also noted that the officer had missed 14 out of at least 27 required field contacts with Ingalls in eight months of supervision.[18] The court acknowledged that a jury could find that those deficiencies constituted negligence but held that this was not substantial evidence of serious negligence and thus fell short of showing gross negligence.[19] The court affirmed summary judgment for the State.[20]

¶24 *Kelley* controls in the case at bar. Vomenici was a misdemeanant convicted of a nonviolent crime, who met with his probation officers seven times in nine months. At each meeting, the probation officers made sure Vomenici understood the terms and conditions of his probation. They consistently inquired if he had committed any violations of the law or had any contact with his accomplices. They checked the state computer database to see if he had any new violations or convictions. They monitored his progress in performing community service and making the required financial payments. When it became apparent he would not

---

[16] *Kelley*, 104 Wn. App. at 330.

[17] *Kelley*, 104 Wn. App. at 332.

[18] *Kelley*, 104 Wn. App. at 336.

[19] *Kelley*, 104 Wn. App. at 338.

[20] *Kelley*, 104 Wn. App. at 338.

be able to fulfill all the requirements, one of the officers had Vomenici sign a motion to modify probation, which was duly signed by the trial judge. Their supervision of Vomenici was of a higher standard than that exercised by the officer in *Kelley*.

¶25 Whitehall asserts that the County was negligent in failing to require the probation officers to perform home visits or contact third parties in the community to ensure Vomenici was fulfilling the provisions of his probation and not committing any further crimes. However, the King County District Court's policy was that probation officers would not conduct home visits or contact third parties in the community. The King County District Court could not have afforded to provide probation services to superior court misdemeanants if doing so would have required such activities by the probation officers. The limited resources available to provide probation services would have precluded the court from performing such functions.

¶26 By its terms, RCW 9.95.206 recognizes the legitimacy of such budgetary constraints by requiring that the classification system and supervision standards be established and met within the resources available as provided by the legislature.[21] Neither RCW 9.95.204 nor RCW 9.95.206 gives rise to the supposition that such affirmative actions as home visits or third party contacts are required in supervising misdemeanant probationers.

¶27 Whitehall also asserts that the County was negligent in hiring, training, and supervision, and that the County is liable because it did not institute policies of its own under the contract with the DOC. The record shows otherwise. The King County District Court Probation Services Division policy manual was adopted by the superior court. With the exception of specific policies or procedures that had no applicability to the provision of probation services in superior court, the superior court unit followed the policies and procedures in the manual. Nothing about the unit's adop-

---

[21] RCW 9.95.206(6).

tion of the district court policies, or the officers' training, gives rise to a finding of gross negligence.

¶28 Vomenici met regularly with his probation officers, who conducted reasonable inquiries into his status and activities. The officers were under no statutory or administrative obligation to conduct home visits or contact third parties, as Whitehall asserts. We hold that under the facts of the case, the County had no duty to monitor Vomenici more closely than it did. Even if there were such a duty, there is no substantial evidence of serious negligence and thus no showing of gross negligence.

¶29 Affirmed.

BECKER and DWYER, JJ., concur.