IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DANIEL SCHULTE and KARINA ULRIKSEN-SCHULTE, husband and wife; DANIEL SCHULTE as Guardian ad Litem of ELIAS ULRIKSEN-SCHULTE, a minor; MARILYN SCHULTE, individually, and as Personal Representative of the Estate of DENNIS SCHULTE, deceased, and as Personal Representative of the Estate of JUDITH SCHULTE, deceased, | No. 72821-1-I<br><br>DIVISION ONE |
| Respondents, | UNPUBLISHED OPINION |
| v. | FILED: July 18, 2016 |
| MARK W. MULLAN and JANE DOE MULLAN, husband and wife, | |
| Defendants, | |
| CITY OF SEATTLE, a municipal corporation, | |
| Appellant. | |

BECKER, J. — The City of Seattle is a defendant in a suit for wrongful death and personal injury caused by a drunk driver who was on probation for a previous drunk driving conviction. The plaintiffs allege the probation officer was grossly negligent for failing to supervise the driver more closely. Because the

record contains evidence from which a jury could find the contested elements of breach of duty and causation, the trial court correctly denied the city's motion for summary judgment.

## FACTS

The plaintiffs seek damages on behalf of four members of the Schulte family. Dennis and Judy Schulte were killed, and their daughter-in-law Karina Ulriksen-Schulte and her newborn son were seriously injured, when a drunk driver hit them as they were crossing a street on March 25, 2013. The driver was Mark Mullan. At the time, he was on probation in Seattle for driving under the influence on December 25, 2012. Charges were pending against him in Snohomish County for driving under the influence on October 8, 2012.

The plaintiffs filed this lawsuit in October 2013 against the city and Mullan, alleging a breach of the duty to supervise probationers. They contend that with proper supervision, Mullan would not have been behind the wheel on March 25, 2013, because he would have been in custody or under close alcohol monitoring for probation violations that should have been discovered. The city moved for summary judgment. The trial court's order denying the city's motion for summary judgment is before us on discretionary review.

Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Hertog v. City of Seattle, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). We make the same inquiry as the trial court. Hertog, 138 Wn.2d at 275. The facts and

reasonable inferences are considered in the light most favorable to the nonmoving party. Hertog, 138 Wn.2d at 275.

The elements of a negligence cause of action are (1) the existence of a duty to the plaintiff, (2) breach of the duty, and (3) injury to plaintiff proximately caused by the breach. Hertog, 138 Wn.2d at 275. Existence of duty is a question of law. Hertog, 138 Wn.2d at 275. Breach and proximate cause are generally fact questions for the trier of fact. But if reasonable minds could not differ, these factual questions may be determined as a matter of law. Hertog, 138 Wn.2d at 275.

DUTY AND BREACH

To determine whether genuine issues of material fact preclude summary judgment on the issue of duty, it is helpful to contemplate in broad strokes how the jury will be instructed on duty if the case goes to trial. Here, the applicable duty is articulated in Hertog: "the City and its probation counselors have a duty to control municipal court probationers to protect others from reasonably foreseeable harm resulting from the probationers' dangerous propensities." Hertog, 138 Wn.2d at 281.

The plaintiffs allege that the probation officer who supervised Mullan breached the city's duty under Hertog in several ways. First, plaintiffs allege the probation officer was negligent in failing to track the pending charge against Mullan for driving under the influence in Snohomish County in October 2012. If she had done so, they contend, she would have discovered that the Snohomish County court issued a warrant when Mullan failed to appear for a court date on

3

January 4, 2013, that Mullan was drunk when he came to court on January 14 to quash the warrant, and that he was held in custody there for more than two weeks until he bailed out. Second, the plaintiffs allege that the probation officer was negligent in failing to contact collateral sources to verify what Mullan was telling her. Arguably, through such inquiry, she would have discovered that Mullan was missing treatment appointments and was continuing to drink and drive.

The city responds that a jury cannot find that Mullan's probation officer breached the duty stated in Hertog because the evidence shows she fully complied with policies and procedures promulgated by the Seattle Municipal Court to guide the intake, risk assignment, and supervision of misdemeanor defendants. The city phrases its argument on appeal as a request for this court to elucidate the "nature and scope" of the duty imposed by Hertog. But in effect, the city is arguing that a Hertog instruction on duty must be accompanied by an instruction informing the jury that the city's duty is limited by policies and procedures decided at the municipal court level and that the duty is fulfilled by compliance with such policies and procedures. The plaintiffs do not agree that the administrative policies and procedures of the municipal court are legal limitations on the city's duty. In the plaintiffs' view, the duty as stated in Hertog is complete and sufficient for a duty instruction, without limitation, embellishment or elaboration.

The city relies on Whitehall v. King County, 140 Wn. App. 761, 167 P.3d 1184 (2007). The offender in Whitehall, while on probation in King County for

theft, maliciously exploded an illegal firework near a residence. The explosion injured an occupant, who then sued the county for negligent supervision. This court upheld a grant of summary judgment to the county, holding that the probation officers had complied with applicable court policies and under the facts of the case, the county was not obligated to monitor the offender more closely than it did. Whitehall, 140 Wn. App. at 770. The plaintiffs contend that Whitehall was wrongly decided.

Even if the duty of supervision is limited as the city asserts, a trial would still be necessary to determine whether the city breached its duty. For example, one of the administrative policies and procedures of the Seattle Municipal Court provides, "Probation staff will follow up as appropriate on new information that requires action." MCS-210-3.06.020(IV)(D). It is a disputed issue whether, as alleged by expert witnesses for the plaintiffs, the pending charge against Mullan in Snohomish County qualified as "new information that requires action." It is also a disputed issue whether an obligation to contact collateral sources for information about Mullan beyond what he himself supplied was imposed by local policy requiring "assessment of offender risk, needs and compliance with court ordered probation conditions." MCS-210-3.06.020. Thus, even if Whitehall is controlling, the trial court did not err in denying the city's motion for summary judgment. In Whitehall, it was undisputed that the probation officers complied with local policies and procedures. Here, it is disputed. Expert testimony on both sides creates a genuine issue of material fact.

5

Accordingly, we decline to revisit Whitehall. Nor do we attempt to draw from Whitehall a conclusion about how the jury should be instructed on duty. We are dealing here with a denial, not a grant, of summary judgment. We are mindful of the pitfalls of interlocutory review of an order denying summary judgment. See Maybury v. City of Seattle, 53 Wn.2d 716, 720-21, 336 P.2d 878 (1959). The trial court has yet to decide, under the facts of the present case that differ significantly from the facts of Whitehall, whether it will be appropriate to instruct the jury that the city's duty is confined to the policies and procedures the municipal court has generated for probation officers. A related question is whether the local policies and procedures exclusively define the standard of care or whether the trial court will permit expert witnesses to opine that more is required under a generalized standard of care for probation officers. The law will be better served if these issues are first decided concretely in the trial court rather than abstractly in this court.

## GROSS NEGLIGENCE

The city is liable for the inadequate supervision or monitoring of its misdemeanant probationers only if its conduct constitutes gross negligence. RCW 4.24.760(1). Presumably, at trial the jury will be instructed that negligence is the failure to exercise ordinary care and that gross negligence is the failure to exercise slight care. See 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 10.01, at 124 (6th ed. 2012) (WPI) (negligence); WPI 10.07, at 132 (gross negligence).

The city contends there is insufficient evidence of gross negligence to send the issue to the jury.

The Washington Supreme Court has lamented both the elusive meaning of gross negligence and the persistent problem of whether to send the issue of gross negligence to the jury. Nist v. Tudor, 67 Wn.2d 322, 325, 407 P.2d 798 (1965). The general inclination is to leave the question to the jury when there is "substantial evidence of acts or omissions seriously negligent in character." Nist, 67 Wn.2d at 326.

Nist states that "gross negligence, being a form of negligence on a larger scale, must also, like ordinary negligence, derive from foreseeability of the hazards out of which the injury arises." Nist, 67 Wn.2d at 331. "In determining the degree of negligence, the law must necessarily look to the hazards of the situation confronting the actor." Nist, 67 Wn.2d at 331. In Nist, the hazard confronting the driver as she was trying to turn left was an oncoming truck. The court held the fact that the driver turned "suddenly into so obvious a danger" supplied sufficient evidence for the jury to find gross negligence. Nist, 67 Wn.2d at 332.

The city relies on Kelley v. Department of Corrections, 104 Wn. App. 328, 17 P.3d 1189 (2000), review granted, 144 Wn.2d 1021 (2001) (motion for voluntary withdrawal of review granted January 10, 2002). In Kelley, a man committed a sexual assault while out on community custody after pleading guilty to attempted rape. Kelley, 104 Wn. App. at 330-31. The victim sued the State for negligent supervision. Kelley, 104 Wn. App. at 329. This court affirmed the

grant of summary judgment to the State, concluding that the evidence fell short of showing gross negligence. Kelley, 104 Wn. App. at 338; see also Whitehall, 140 Wn. App. at 770.

Here, the city contends a jury could not rationally find gross negligence because the probation officer's level of supervision satisfied or exceeded the standard of care set by local court policies and procedures. As discussed above, that is a matter of factual dispute. Also, the trial court persuasively distinguished Whitehall and Kelley when noting that unlike in those cases, here there was a "direct correlation" between the allegedly inadequate supervision of Mullan and the danger reflected in his recent criminal activities. The probation officer was confronted with the arguably foreseeable hazard that Mullan would continue to drink and continue to drive under the influence. Because a jury could find that the probation officer breached her duty by failing to track the Snohomish County case and contact collateral sources, a jury could also find that the breach was a failure to use even slight care. Following Nist, we conclude the trial court did not err in allowing the issue of gross negligence to go to a jury.

## CAUSATION

The city contends that even if the evidence supports gross negligence, the plaintiffs' claims must fail for lack of proximate cause. Proximate cause consists of cause in fact and legal causation. Hertog, 138 Wn.2d at 282. Cause in fact concerns "but for" causation, events the acts produced in a direct unbroken sequence which would not have resulted had the act not occurred. Hertog, 138

Wn.2d at 282. Proximate cause is generally a fact question for the trier of fact if reasonable minds could differ. See Hertog, 138 Wn.2d at 275.

The city contends a jury would have to engage in speculation to find: (1) that the probation officer would have learned from collateral sources enough information about Mullan's continued drinking and driving to justify asking the court to revoke his probation, (2) that the court would have held a contested hearing on allegations that Mullan was violating his conditions of probation, and (3) that the court would have found Mullan in violation and would have incarcerated him for a period including the day when he drove drunk and crashed into the Schulte family. For its analysis of causation, the city relies on Estate of Bordon v. Department of Corrections, 122 Wn. App. 227, 95 P.3d 764 (2004), review denied, 154 Wn.2d 1003 (2005).

In Bordon, the plaintiff, suing the State for negligently supervising a convict, did not submit evidence about when a violation report would have been filed, when it would have been heard, whether the violation would have been pursued or proven, whether the violation would have resulted in additional jail time, or whether that jail time would have encompassed the date of the plaintiff's injury. Bordon, 122 Wn. App. at 241. This court held that because the plaintiff did not present any evidence establishing a direct causal connection between the alleged negligence and the harm she suffered, the trial court erred when it denied the State's motion for judgment as a matter of law at the conclusion of the plaintiff's case. Bordon, 122 Wn. App. at 244.

9

In this case, the plaintiffs have presented evidence of the kind that was missing in Bordon. The Snohomish County court docket showing Mullan's drunken court appearance in that court on January 14, 2013, was there to discover if the probation officer had been tracking the case. Expert witnesses with experience in probation counseling testified that discovery of that incident would have resulted in an immediate violation report, a recommendation of significant jail time for Mullan and more intensive monitoring of his movements. With that information, a retired judge testified, the court would most likely have set additional review dates and additional monitoring conditions such as day reporting, daily portable breath test monitoring, or electronic home monitoring to make sure Mullan was compliant with his treatment program.

The evidence submitted by plaintiffs is adequate to support a rational jury in making a nonspeculative finding that, but for the city's failures in supervision, Mullan would not have been able to drive drunk on March 25, 2013. A jury could find that Mullan either would have been incarcerated on that date or at least would have been on an alcohol monitoring system. Because reasonable minds could differ, the question of cause in fact is for the jury.

The city also argues that the question of legal causation should be decided in its favor. Legal causation, an issue for the court to decide as a matter of policy, may be found lacking even if cause in fact is present when "the connection between the ultimate result and the act of the defendant is too remote or insubstantial to impose liability." Schooley v. Pinch's Deli Mkt., Inc., 134 Wn.2d 468, 478-79, 951 P.2d 749 (1998). "Legal causation is, among other

things, a concept that permits a court for sound policy reasons to limit liability where duty and foreseeability concepts alone indicate liability can arise." Schooley, 134 Wn.2d at 479. The city argues that making municipal probation departments liable for roadway tragedies caused by repeat drunk drivers will unduly strain municipal budgets and encourage courts to disband probation services altogether.

The city's argument on the lack of legal causation is foreclosed by Hertog, where the court rejected a similar argument. "Where a special relation exists based upon taking charge of the third party, the ability and duty to control the third party indicate that defendant's actions in failing to meet that duty are not too remote to impose liability." Hertog, 138 Wn.2d at 284. The Hertog court perceived that it was being asked to overrule Taggart v. State, 118 Wn.2d 195, 822 P.2d 243 (1992), and it declined to do so. Hertog, 138 Wn.2d at 284. See Taggart, 118 Wn.2d at 228 ("We do not believe recognizing that a parole officer's negligent supervision may be the legal cause of the injuries suffered by the victims of parolees' violent crimes will have an undue chilling effect upon parole officers' performance of their duties.")

IGNITION INTERLOCK DEVICE

One of the conditions of Mullan's sentence was to comply with "mandatory ignition interlock device requirements as imposed by the Department of Licensing." The probation officer gave Mullan information about contacting the Department of Licensing but did not verify that the device had been installed on Mullan's truck. Plaintiffs moved for partial summary judgment, requesting the

court to rule as a matter of law that the city's failure to verify installation was a breach of its duty to exercise slight care. The trial court denied the motion.

The plaintiffs ask this court to review and reverse this ruling as an error likely to be repeated on remand. RAP 2.4(a)(1). Because the plaintiffs, respondents on appeal, did not seek review of the decision denying their motion for summary judgment, we may reverse the trial court's decision only "if demanded by the necessities of the case." RAP 2.4(a)(2). Plaintiffs have not persuasively demonstrated necessity. The ruling is merely a denial of summary judgment and thus it remains subject to revision in the trial court as the case proceeds.

In summary, having reviewed the pretrial rulings the city has placed before us, and having considered the issues of duty, gross negligence, and causation, we conclude intervention by this court is not warranted. The denial of summary judgment is affirmed.

Becker, J.

WE CONCUR:

Leach, J.

Spearman, J.