[No. 12447-9-III.   Division Three.   November 16, 1993.]

IRIS L. BOYCE, *as Personal Representative, Appellant,* v. JAMES WEST, ET AL, *Respondents.*

---

*Stanley A. Bastian, James M. Danielson,* and *Jeffers, Danielson, Sonn & Aylward, P.S.,* for appellant.

*Curtis L. Shoemaker, Michael L. Wolfe,* and *Paine, Hamblen, Coffin, Brooke & Miller,* for respondents.

SHIELDS, J.[*] — This is a wrongful death action arising out of a scuba diving accident. The court dismissed the defendants on summary judgment after finding the decedent Peter Boyce had released them from liability and assumed all risks associated with the scuba diving course he was taking. Iris Boyce appeals, contending the liability releases that her son signed did not cover instructor James West and should not be enforced as to Gonzaga University as a matter of public policy. Mrs. Boyce further contends there are genuine issues of material fact as to whether Mr. West was grossly negligent and whether her son assumed the risk of negligent instruction and supervision by Mr. West. We affirm.

Mr. Boyce was a student at Gonzaga University. In the spring of 1988, during his freshman year, he enrolled in Scuba Diving 1, an introductory scuba diving course offered as a physical education elective. At the beginning of the course he signed documents entitled "PADI[1] Standard Safe Diving Practices Statement of Understanding", "PADI Medical Statement", and "Affirmation and Liability Release". The latter document purported to release Down Under Divers and PADI from all liability for negligence and to affirm Mr.

---

[*]Judge George T. Shields is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

[1]PADI stands for Professional Association of Diving Instructors.

Boyce's full assumption of all risks associated with the program. Mr. Boyce successfully completed the course, taught by Down Under Divers' employee John Miller; he earned an A and received one credit. All dives took place in the school's swimming pool.

During the summer, Mr. Boyce became a certified scuba diver after completing at least four open-water dives with an independent certifying authority. Certification was a prerequisite for taking the advanced scuba diving course (Scuba Diving 2) offered by Gonzaga.

In the fall of 1988, Mr. Boyce enrolled in Scuba Diving 2, which was taught by James West, an adjunct instructor at Gonzaga and owner of Down Under Divers. At the first class on September 5, Mr. Boyce again signed documents entitled "PADI Standard Safe Diving Practices Statement of Understanding", "PADI Medical Statement", and "Affirmation and Liability Release". The forms were not identical to those he had signed for the beginning course, but were substantially similar. This time the release named PADI and Gonzaga University.

By November 27, 1988, Mr. Boyce had successfully completed three of the five specialty dives planned for the course. He died that day during the fourth dive, a deepwater dive in Lake Coeur d'Alene. The diving group consisted of instructor West, Mr. Boyce, and two other students, Steve Kozlowski and John Sterling. The dive required the use of dry suits, so they had spent several hours the day before learning to use them. During the dive the divers descended 80 to 100 feet along an anchor line to the bottom of the lake, then swam 10 to 15 feet to a wreck. There, Mr. West checked his students' air supplies. Concerned that they were running low on air because Mr. Kozlowski and Mr. Boyce both registered only 800 pounds of air, one-half of the amount they started with, he signaled the group to return to the anchor line and ascend to the surface. When they got back to the anchor line, Mr. Kozlowski indicated he was very low on air: he had just 100

pounds of air left. As Mr. West turned to check on Mr. Sterling and Mr. Boyce, Mr. Kozlowski tugged at him, panicked over lack of air. Mr. West immediately gave Mr. Kozlowski his alternate regulator and assisted him to the surface, buddy breathing along the way. In the emergency, he lost sight of Mr. Boyce. Mr. West next saw Mr. Boyce floating on the surface. Resuscitation efforts were unsuccessful; Mr. Boyce died of air embolism resulting from too rapid an ascent.

Iris Boyce, as personal representative of her son's estate, sued Mr. West and Gonzaga for wrongful death. The complaint asserts Mr. West negligently caused Mr. Boyce's death and Gonzaga is vicariously liable for the negligence of its agent. The defendants denied negligence and asserted as alternative affirmative defenses the release of liability[2] and assumption of risk[3] provisions contained in the documents signed by Mr. Boyce.

Mr. West and Gonzaga moved for summary judgment. Mrs. Boyce resisted the motion and submitted parts of a deposition of Charles R. Lewis, a dive master, in which Mr. Lewis expresses his opinion that Mr. West was negligent in his instruction and supervision of the students. Mr. Lewis did acknowledge that with the 50 pounds of air Mr. Boyce still had when he reached the surface, he would have had enough air had he continued to exhale on the way up, and that free

---

[2]"I understand and agree that neither . . . Gonzaga University . . . nor [PADI] may be held liable in any way for any occurrence in connection with this diving class that may result in injury, death, or other damages to me or my family, heirs, or assigns, . . . and further to save and hold harmless said program and persons from any claim by me, or my family, estate, heirs, or assigns, arising out of my enrollment and participation in this course.

" . . . .

"It is the intention of [Peter Boyce] by this instrument to exempt and release [Gonzaga University] and [PADI] from all liability whatsoever for personal injury, property damage or wrongful death caused by negligence."

[3]"[I]n consideration of being allowed to enroll in this course, I hereby personally assume all risks in connection with said course, for any harm, injury or damage that may befall me while I am enrolled as a student of the course, including all risks connected therewith, whether foreseen or unforeseen; . . .[.]"

ascents have been made from greater depths. By memorandum decision entered April 15, 1992, the court granted the motion for summary judgment.

## RELEASE OF LIABILITY

Mrs. Boyce first contends neither of the releases of liability signed by Mr. Boyce cover Mr. West. We agree the spring release does not apply to Mr. West,[4] but conclude the fall release does.

A release is a contract in which one party agrees to abandon or relinquish a claim, obligation or cause of action against another party. 6 M. Minzer, J. Nates, C. Kimball, and D. Axelrod, *Damages in Tort Actions* § 51.11[3], at 51-9 (1991). As a contract, a release is to be construed according to the legal principles applicable to contracts. *Stottlemyre v. Reed*, 35 Wn. App. 169, 171, 665 P.2d 1383, *review denied*, 100 Wn.2d 1015 (1983). Exculpatory clauses are strictly construed and must be clear if the release from liability is to be enforced. *Scott v. Pacific West Mt. Resort*, 119 Wn.2d 484, 490, 834 P.2d 6 (1992).

The fall release, signed September 5, 1988, names only Gonzaga and PADI. Mrs. Boyce concedes it releases Gonzaga from liability unless a public interest is involved. The release does not name Mr. West, but it is undisputed that Mr. West was Gonzaga's employee. The general rule is that a preinjury release of the employer from liability also releases the employee.[5] Restatement (Second) of Agency § 347(2) & comment

---

[4]The spring release, signed on January 20, 1988, names only Down Under Divers and PADI; it does not mention or in any way refer to Mr. West or Gonzaga. It was executed by Mr. Boyce for the introductory scuba diving course he took in the spring. That course was successfully completed without incident and none of the allegations in the wrongful death complaint pertain to it. The spring release has no relevance to this lawsuit. The trial court erred by finding it protected Mr. West from liability.

[5]Mrs. Boyce argues to the contrary, citing *Vanderpool v. Grange Ins. Ass'n*, 110 Wn.2d 483, 756 P.2d 111 (1988). However, *Vanderpool* involved a postinjury settlement and the release of an employer from vicarious liability. The case was decided on the basis of RCW 4.22.060(2), which states:

*b* (1958); *see* 3 C.J.S. *Agency* § 379 (1973). Mr. West, in the performance of his job as an instructor for Gonzaga, owed Mr. Boyce no greater duty of care than Gonzaga, which by contract relieved itself from liability for harm caused by ordinary negligence.[6] Restatement (Second) of Agency § 347(2), comment *b*; § 350, comment *d* (1958). Put another way,

> [when] a valid agreement is entered into between an employer and a third person, exculpating the former from liability to the latter for ordinary negligence, an employee is ordinarily entitled to the same exculpation as his employer, even though he is not expressly named as a beneficiary of such exculpation.

*Mayfair Fabrics v. Henley*, 101 N.J. Super. 363, 375-76, 244 A.2d 344, 351 (1968). Mr. West, as an employee of Gonzaga, was covered by the agreement releasing Gonzaga from liability for negligent harm to Mr. Boyce.

■ Mrs. Boyce next contends the release of Gonzaga from liability violates public policy and should not be enforced. In Washington, contracts of release of liability for negligence are valid unless a public interest is involved. *Hewitt v. Miller*, 11 Wn. App. 72, 521 P.2d 244, *review denied*, 84 Wn.2d 1007 (1974).

*Wagenblast v. Odessa Sch. Dist. 105-157-166J*, 110 Wn.2d 845, 758 P.2d 968, 85 A.L.R.4th 331 (1988) sets forth six factors, taken from *Tunkl v. Regents of Univ. of Cal.*, 60 Cal. 2d 92, 383 P.2d 441, 32 Cal. Rptr. 33, 6 A.L.R.3d 693 (1963), which are to be considered in determining whether exculpatory agreements violate public policy. The court considers whether (1) the agreement concerns an endeavor of a type

---

A release . . . entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides.

That statute does not apply in this case.

[6]Gross negligence, nuisance, or willful or wanton misconduct may render a release of liability agreement unenforceable. *Blide v. Rainier Mountaineering, Inc.*, 30 Wn. App. 571, 574, 636 P.2d 492 (1981), *review denied*, 96 Wn.2d 1027 (1982); *Hewitt v. Miller*, 11 Wn. App. 72, 77 n.1, 521 P.2d 244, *review denied*, 84 Wn.2d 1007 (1974); 6 M. Minzer, J. Nates, C. Kimball, and D. Axelrod § 51.11[3] (1991).

generally thought suitable for public regulation; (2) the party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public; (3) such party holds itself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards; (4) because of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks the services; (5) in exercising a superior bargaining power, the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence; and (6) the person or property of members of the public seeking such services must be placed under the control of the furnisher of the services, subject to the risk of carelessness on the part of the furnisher, its employees or agents. *Wagenblast*, at 851-55. Those factors are not present here. As noted in *Hewitt*, at 74, "[e]xtended discussion is not required to conclude that instruction in scuba diving does not involve a public duty . . .." *Accord, Blide v. Rainier Mountaineering, Inc.*, 30 Wn. App. 571, 574, 636 P.2d 492 (1981), *review denied*, 96 Wn.2d 1027 (1982), in which the court noted: "Although a popular sport in Washington, mountaineering, like scuba diving, does not involve public interest . . .."

*Madison v. Superior Court*, 203 Cal. App. 3d 589, 250 Cal. Rptr. 299 (1988) is a factually similar case arising out of the death of a student enrolled in a scuba diving course offered through the YMCA. The *Madison* court applied the *Tunkl* factors and concluded a release signed by the scuba student did not involve a public interest. It then observed, in words that apply to this case as well:

Here, [decedent] certainly had the option of not taking the class. There was no practical necessity that he do so. In view of the

dangerous nature of this particular activity defendants could reasonably require the execution of the release as a condition of enrollment. [Decedent] entered into a private and voluntary transaction in which, in exchange for an enrollment in a class which he desired to take, he freely agreed to waive any claim against the defendants for a negligent act by them. This case involves no more a question of public interest than does motorcross racing, sky diving, or motorcycle dirtbike riding.

(Citations omitted.) *Madison*, at 599. We do not find a public interest in a private school[7] offering scuba diving instruction to qualified students as an elective course. Upholding the release of Gonzaga does not violate public policy.

Mrs. Boyce further contends there are issues of material fact whether the defendants were grossly negligent. If Mr. West's negligent acts fell greatly below the standard established by law for the protection of others against unreasonable risk of harm, the releases are unenforceable. *Blide*, at 573.

A defendant who can point out to the trial court that the plaintiff lacks competent evidence to support an essential element of the plaintiff's case is entitled to summary judgment because a complete failure of proof concerning an element necessarily renders all other facts immaterial. *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 225 & n.1, 770 P.2d 182 (1989); *Guile v. Ballard Comm'ty Hosp.*, 70 Wn. App. 18, 23, 851 P.2d 689, *review denied*, 122 Wn.2d 1010 (1993). Evidence of negligence is not evidence of gross negligence; to raise an issue of gross negligence, there must be substantial evidence of serious negligence. *Nist v. Tudor*, 67 Wn.2d 322, 332, 407 P.2d 798 (1965). Since a release of liability exculpates ordinary negligence, if it occurs, the plaintiff must establish gross negligence affirmatively to avoid enforcement of the release.

Mrs. Boyce neither alleged gross negligence in her complaint, nor amended it to make that allegation, nor provided

---

[7]As a private school, Gonzaga is not in a substantially different position than the YMCA in *Madison* or the private business in *Hewitt*.

the court with any evidence supporting an allegation of gross negligence. The only evidence of any degree of negligence presented by Mrs. Boyce consists of excerpts of the deposition testimony of her expert, Mr. Lewis. In those excerpts, Mr. Lewis expresses his opinion that Mr. West was negligent. However, as the trial court found, nothing in Mr. Lewis' testimony supports Mrs. Boyce's assertion that Mr. West was grossly negligent. Mrs. Boyce's allegation, supported by nothing more substantial than argument, is insufficient to defeat a motion for summary judgment. CR 56(e); *Guile*, at 25. Because there was no material issue of fact as to the existence of gross negligence, an essential element for avoidance of the release of liability, summary judgment was proper.

## ASSUMPTION OF RISK

Mrs. Boyce, in response to respondents' alternative defense, also contends her son did not assume the risk of negligent instruction and supervision. She argues assumption of the risk, whether express or implied primary, bars recovery only for injuries resulting from known risks voluntarily assumed. *Kirk v. WSU*, 109 Wn.2d 448, 453-54, 746 P.2d 285 (1987) and cases cited therein. Thus, to the extent Mr. Boyce's death resulted from other unknown risks, created by the defendants, Mrs. Boyce argues Mr. West and Gonzaga remain liable. *Kirk*, at 455. *See also 'Scott v. Pacific West Mt. Resort*, 119 Wn.2d 484, 499, 834 P.2d 6 (1992).

In its memorandum decision, the trial court blurs the distinction between express assumption of the risk and implied primary assumption of the risk and refers to "express primary assumption of the risk." The confusion is understandable; the entire doctrine is surrounded by confusion. *Scott*, at 496. Express primary assumption of risk arises out of a contract concept; implied primary assumption of risk arises out of a tort concept. *Scott*, at 496-98. Identical in result to a release of liability which exculpates for ordinary negligence if it occurs, express and implied primary assumption of risk exculpate by shifting the duty of care from the defendant to the plaintiff, thus preventing negligence from

occurring. Express assumption of risk bars a claim resulting from risks *actually assumed* by the plaintiff; implied primary assumption of risk bars a claim resulting from specific *known* and *appreciated* risks. *Scott*, at 497. One who participates in sports impliedly assumes the risks which are inherent in the sport. *Scott*, at 498.

1. Express assumption of risk. Mr. Boyce acknowledged the possibility of death from scuba diving and assumed "all risks in connection with [the scuba diving] course . . . while I am enrolled as a student of the course, including all risks connected therewith, whether foreseen or unforeseen . . .". Negligent instruction and supervision are clearly risks associated with being a student in a scuba diving course and are encompassed by the broad language of the contract. That Mr. Boyce may not have specifically considered the possibility of instructor negligence when he signed the release does not invalidate his express assumption of *all risks* associated with his participation in the course. Again, the words used by the court in *Madison*, at 601 (quoting from *Coates v. Newhall Land & Farming, Inc.*, 191 Cal. App. 3d 1, 9, 236 Cal. Rptr. 181 (1987)), apply just as well to this case:

> ". . . knowledge of a particular risk is unnecessary when there is an express agreement to assume all risk; by express agreement a 'plaintiff may undertake to assume all of the risks of a particular . . . situation, *whether they are known or unknown to him.*' (Rest.2d Torts § 496D, com. a, italics added; Prosser & Keeton, Torts (5th ed. 1984) § 68, p. 482.)" (Fn. Omitted.)

As with the release of liability exculpating ordinary negligence, in the absence of a showing of gross negligence, Mr. Boyce's express assumption of all risks associated with his enrollment in the scuba diving course bars a claim for recovery. W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 68, at 484 (5th ed. 1984). The summary judgment on this alternative defense was also proper.

2. Implied primary assumption of risk. Although the summary judgment is supported alternatively on the grounds of release of liability and express assumption of risk, the trial court's memorandum decision suggests the court also relied

on implied primary assumption of risk as a basis for summary judgment. This was unnecessary. In any case, Mr. Boyce's express assumption of all risk provides adequate grounds to support the summary judgment. We need not, and do not, decide whether implied primary assumption of the risk applies to these facts. Summary judgment was properly granted.

We affirm.

SWEENEY, A.C.J., and MUNSON, J., concur.