## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| RYAN GUTIERREZ, an individual, | No.  58985-1-II |
| Appellant, | |
| v. | |
| HARDCORE BARBELL, LLC, | UNPUBLISHED OPINION |
| Respondent, | |
| v. | |
| GARY PANTTILA, an individual, and STRONGMAN CORP., a Foreign Profit Corporation, | |
| Third-Party Defendants. | |

PRICE, J. — Ryan Gutierrez entered a Strongman weightlifting competition hosted by Hardcore Barbell LLC.  While using one of the apparatuses during the competition, Gutierrez was injured.  Gutierrez later brought a lawsuit against Hardcore.  The superior court dismissed Gutierrez's complaint on summary judgment.

Gutierrez appeals, generally arguing that the superior court erred because sufficient evidence supports a prima facie claim against Hardcore for gross negligence and because the principles of assumption of risk do not preclude his recovery.  We disagree and affirm.

FACTS

I. BACKGROUND ON STRONGMAN CORPORATION COMPETITIONS

Strongman Corporation fitness competitions include both traditional and nontraditional weightlifting events. The competitions are sanctioned by Strongman, but they are typically hosted by "promoters," which can include private companies or gyms. While promoters are bound by certain competition requirements, they enjoy broad discretion to decide which events they want in their competition. Many of the nontraditional events are unique to Strongman competitions, and there are no standardized specifications required for the equipment. And because some of this equipment is not commercially available, there are no prohibitions against homemade equipment.

One Strongman event that could be considered nontraditional is the "Conan's Wheel." The Conan's Wheel is an apparatus that is comprised of a metal pole that rotates parallel to the ground on a centralized spoke. During the event, competitors must carry weight that is attached to the pole and walk around the spoke for a certain amount of time or rotations. Some designs include a base foot or leg that allows a competitor to pick up the weighted pole without needing to bend over. Strongman does not provide specifications for the construction of a Conan's Wheel. There is no standard design for the Conan's Wheel itself or for the base foot—the wheels can come in many different shapes and sizes.

II. HARDCORE'S SPONSORED STRONGMAN COMPETITION

Hardcore, owned by Craig Recore, was approved to host a Strongman competition in June 2021. Competitors who wished to register for the event were required to be Strongman members and to have "more experience than novices." Clerk's Papers (CP) at 101.

No. 58985-1-II

Competitors were also required to sign the registration form that included language releasing both Hardcore and Strongman from liability for any injuries. The release read,

> The Athlete fully understands and accepts that events and competitions of Strength athletics involves physical exertion. The Athlete shall not enter nor continue in any event or competition unless medically and physically fit enough to do so and by any event or competition the Athlete shall warrant the same and hold, STRONGMAN CORP. AND Hardcore Barbell, LLC, free from any and all liability.
>
> . . . .
>
> The Athlete expressly releases, STRONGMAN CORP. AND Hardcore Barbell, LLC, and its employees, servants, agents, designees and appointees from any and all actions, claims, liabilities, loss, costs or expense which may arise whether directly or indirectly from participation in any, STRONGMAN CORP. AND Hardcore Barbell, LLC's event or competition including but not limited to injury and the implementation of the, STRONGMAN CORP. AND Hardcore Barbell, LLC's Health Policy.

CP at 91.

The registration form also included language advising participants to consider their own health when deciding whether or not to participate:

> [T]he Athlete shall take all reasonable steps to safeguard their own health and safety and that of any person who may be affected by their activities during participation in events and competitions.
>
> The Athlete shall co-operate with, STRONGMAN CORP. AND Hardcore Barbell, LLC and their designees or appointees in this regard. The Athlete shall not participate in any competition or event if not in good health nor fit enough to participate.
>
> The Athlete shall inspect all equipment used in the competition and confirm that in his opinion it is safe to use.

CP at 91.

When planning the competition, Recore decided to include, among other events, a Conan's Wheel. Recore purchased the Conan's Wheel from Gary Panttila.

3

Panttila had experience both as a Strongman competitor and as a welder, and he had designed and constructed a Conan's Wheel based on his experience participating in various competitions. The wheel that he sold to Recore was similar to ones that Panttila had seen used successfully without any injuries. In fact, Panttila had previously used the specific wheel that he sold Recore, and he had never been aware of anyone being injured until Gutierrez.

After purchasing the Conan's Wheel from Panttila, Recore tested it "extensively." CP at 104. He and at least three other individuals with weightlifting experience used the wheel multiple times "to ensure that it functioned correctly and would not pose any technical or safety problems for the competitors." CP at 104. Recore believed that if the weight on the Conan's Wheel became too heavy, the person carrying it "could simply drop the weight." CP at 104. And the competition's rules ensured that competitors could just drop the weight without being additionally penalized.

Recore decided to locate the Conan's Wheel in the gym's parking lot in order to have ample space for the event. The parking lot had recently been re-asphalted and Recore considered it to be in "good condition." CP at 105. He "did not observe any cracks, loose rock or gravel, indentations, potholes, or anything that [he] thought could impact the competitors' performance or cause an issue." CP at 105. He also did not observe any slope or unevenness in the ground.

Recore placed a box under the far end of the Conan's Wheel so that competitors would not have to bend all the way over in order to pick up the weight. This set up was similar to wheel setups that Recore had seen before in other Strongman competitions.

Prior to Gutierrez's lawsuit, Recore had not received any complaints from competitors about the Conan's Wheel, the ground it was placed on, or the safety of the competition.

III. GUTIERREZ'S PARTICIPATION IN THE STRONGMAN COMPETITION

Gutierrez entered the competition and signed the registration form.

Like other competitors, Gutierrez practiced with the Conan's Wheel on the day of the competition. During this warm-up, Gutierrez would later say that he was concerned that the ground around the Conan's Wheel was "uneven" and on "a slight grade" and that the base leg attached to the pole was "short." CP at 74-75. Despite being "skeptical," Gutierrez did not raise his concerns to anyone, including Hardcore, and still participated in the event because he "thought . . . it was going to be safe." CP at 75-76.

While Gutierrez was competing in the event, he felt his right knee "bl[o]w out." CP at 85. Gutierrez significantly injured both knees, requiring surgery.

IV. GUTIERREZ'S SUBSEQUENT COMPLAINT AND SUBSEQUENT PROCEEDINGS

In January 2022, Gutierrez filed a complaint against Hardcore. Likely because of the signed release, Gutierrez framed his complaint as an allegation of gross negligence.[1] He alleged the Conan's Wheel was constructed inadequately and was "dangerously unsafe, in that it did not provide adequate protection for an athlete who stumbled or fell while carrying the heavy weight." CP at 2.

Hardcore moved for summary judgment. Hardcore argued that given the enforceability of the release, Gutierrez had the burden to provide evidence that Hardcore's use of the Conan's Wheel constituted gross negligence and that Gutierrez could not meet this burden. Hardcore further

---

[1] Generally, a valid release from liability is enforceable unless a party committed gross negligence, nuisance, or willful or wanton misconduct. *Boyce v. West*, 71 Wn. App. 657, 663 n.6, 862 P.2d 592 (1993).

argued that even if there was sufficient evidence to support a claim of gross negligence, Gutierrez assumed the risk. Hardcore supported its motion with declarations from Recore and Panttila, copies of the release of liability, and excerpts from Gutierrez's deposition testimony.

In response, Gutierrez argued that Hardcore had failed to meet its initial burden to successfully negate his claim of gross negligence. Gutierrez's response provided no additional declarations, expert or otherwise, and no additional documents other than two of his interrogatory responses, in which he described his general good health prior to the competition and the details of his injuries. According to Gutierrez, the dangers of Hardcore's Conan's Wheel were so "readily apparent to a lay person" that "no expert testimony [was] necessary to explain it." CP at 188.

The superior court granted Hardcore's motion and dismissed Gutierrez's claim with prejudice.

Gutierrez appeals.

ANALYSIS

Gutierrez argues that the superior court erred in dismissing his claim because there is sufficient evidence in the record to support a prima facie claim for gross negligence against Hardcore. We disagree.

I. STANDARD OF REVIEW

We review motions for summary judgment de novo. *M.E. v. City of Tacoma*, 15 Wn. App. 2d 21, 31, 471 P.3d 950 (2020), *review denied*, 196 Wn.2d 1035 (2021). Summary judgment may be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Meyers v. Ferndale Sch. Dist.*, 197 Wn.2d 281, 287, 481 P.3d 1084 (2021). Its purpose is to prevent useless trials. *Nguyen v. Sacred Heart Med. Ctr.*, 97 Wn. App.

728, 734, 987 P.2d 634 (1999). Even if there is no dispute of evidentiary facts, if " 'different inferences may be drawn therefrom as to ultimate facts such as intent,' " then summary judgment is not appropriate. *Kelley v. Tonda*, 198 Wn. App. 303, 311, 393 P.3d 824 (2017) (quoting *Preston v. Duncan*, 55 Wn.2d 678, 681-82, 349 P.2d 605 (1960). When determining whether to grant summary judgment, we view the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Id.* at 310.

Summary judgment follows a burden-shifting structure. *See Hash v. Child.'s Orthopedic Hosp. & Med. Ctr.*, 110 Wn.2d 912, 915, 757 P.2d 507 (1988). The moving party bears the initial burden of proving that they are entitled to a judgment as a matter of law. *Id.* "If the moving party is the defendant, it may meet this burden by pointing out that there is an absence of evidence to support an essential element of the plaintiff's claim." *Boguch v. Landover Corp.*, 153 Wn. App. 595, 609, 224 P.3d 795 (2009).

The burden then shifts back to the nonmoving plaintiff to make a prima facie case establishing the existence of each essential element to their claim. *Id.* To defeat summary judgment, it is not enough for the nonmoving plaintiff to offer speculative or argumentative assertions, opinions, or conclusory statements—they must offer specific, detailed, and disputed facts supported by documentary evidence. *Sanders v. Woods*, 121 Wn. App. 593, 600, 89 P.3d 312 (2004).

## II. GUTIERREZ'S BURDEN TO MAKE A PRIMA FACIE CLAIM OF GROSS NEGLIGENCE

Gutierrez essentially contends that the superior court erred because there was "[a]bundant" evidence that Hardcore's conduct constituted gross negligence. Appellant's Br. at 15. We disagree.

"Gross negligence" is " 'substantially and appreciably greater than ordinary negligence.' " *Spencer v. King County*, 39 Wn. App. 201, 206, 692 P.2d 874 (1984) (quoting *Nist v. Tudor*, 67 Wn.2d 322, 331, 407 P.2d 798 (1965)), *review denied*, 103 Wn.2d 1035 (1985), *overruled on other grounds by Frost v. City of Walla Walla*, 106 Wn.2d 669, 724 P.2d 1017 (1986). A plaintiff claiming gross negligence must show that the defendant " '*substantially*' breached its duty by failing to act with even slight care." *Harper v. Dep't of Corr.*, 192 Wn.2d 328, 341, 429 P.3d 1071 (2018) (quoting *Nist*, 67 Wn.2d at 331). A failure to act with slight care does not mean there was a " 'total absence of care' " but that the level of care exhibited by the defendant was significantly less than when a defendant was merely negligent. *Id.* at 342 (quoting *Nist*, 67 Wn.2d at 331). Because this is a much higher bar, evidence of ordinary negligence is insufficient to make a prima facie claim for gross negligence. *Boyce v. West*, 71 Wn. App. 657, 665, 862 P.2d 592 (1993).

Generally the issue of whether a defendant failed to act with even slight care must be decided by a jury; however, courts may decide the issue on summary judgment " 'if reasonable minds could not differ.' " *Harper*, 192 Wn.2d at 341 (quoting *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999)).

For claims of gross negligence, our Supreme Court in *Harper* outlined a two-step process for summary judgment. *Id.* at 343. First, we must identify the specific "failure" alleged by the plaintiff or "the action that the plaintiff claims that the defendant should have taken but did not." *Id.* Second, looking at all of the evidence (including what the defendant failed to do *and* what they did), we must determine if the plaintiff provided substantial evidence that the defendant failed to exercise slight care under the circumstances. *Id.* If reasonable minds would agree that the

defendant exercised even slight care, summary judgment must be granted for the defendant. *Id.* at 346.

An example of when summary judgment is *not* appropriate can be seen in *Swank v. Valley Christian School*, 188 Wn.2d 663, 398 P.3d 1108 (2017). There, our Supreme Court was tasked with determining whether there were genuine issues of material fact as to whether a high school football coach was grossly negligent when he failed to monitor a student for concussion symptoms during a football game. *Id.* at 668. Witness testimony suggested that the student was acting strangely, "sluggish," and disoriented. *Id.* at 686 (internal quotation marks omitted). The plaintiffs also submitted expert testimony from a doctor that confirmed that the student was exhibiting clear symptoms of a concussion and that the coach should have removed the student from play until they could be properly evaluated. *Id.* at 686-87. Considering this evidence "as a whole," the *Swank* court held that summary judgment was improper because a jury could potentially find that the coach "substantially" breached his duty to act with slight care. *Id.* at 687 (internal quotation marks omitted).

Following the process set out in *Harper*, we first identify Hardcore's alleged breach—here, the alleged failure to provide a reasonably safe Conan's Wheel. Next, we look at all the evidence and identify what Hardcore did, and failed to do, with respect to the use of the Conan's Wheel.

Gutierrez alleges gross negligence "can be easily seen" in Hardcore's use of the Conan's Wheel. Appellant's Br. at 15. According to Gutierrez, Hardcore supplied a Conan's Wheel for that competition that was built "by an amateur," had a base leg that was "too-short" to protect participants, and was set up on dangerously uneven ground. Appellant's Br. at 14. These allegations about the wheel's base leg and the uneven surface are supported in the record solely by

Gutierrez's deposition testimony during which he suggested the wheel's leg was "short" and the ground was at "a slight grade." CP at 74-75. Taken together, Gutierrez contends reasonable minds could conclude that Hardcore failed to act with slight care.

We are unpersuaded. It is true that Hardcore purchased the Conan's Wheel from someone who could be characterized as an "amateur." Panttila was not a commercial manufacturer of wheels; he was a Strongman competitor who constructed this particular Conan's Wheel as a personal project. But the record shows that there is no "standardized" Conan's Wheel and that they are not commercially available. CP at 169. And Hardcore provided evidence that Panttila had experience welding and participating in Strongman competitions and had designed the wheel to be similar to ones used without incident. If there are standards for an acceptable construction of Conan's Wheels and information about how this particular wheel fails to meet those standards, Gutierrez has not provided that information.

Indeed, Gutierrez's position fails to look at *all* of the evidence, including the safety precautions taken by Hardcore for this competition. For example, Hardcore tested the Conan's Wheel "extensively" with multiple experienced weightlifters prior to the competition "to ensure that it functioned correctly and would not pose any technical or safety problems for the competitors." CP at 104. Moreover, on the day of the competition, the competitors, including Gutierrez, were allowed to practice with the wheel.

In addition, the Conan's Wheel was apparently designed in a way that would allow a competitor to "simply drop the weight" if they could not carry it any longer. CP at 104. And the competition rules were designed so that competitors would not be additionally penalized for dropping the weight if they could no longer carry it.

Recore also considered the safety of where he placed the Conan's Wheel. He said that he placed the Conan's Wheel outside in the parking lot and ensured that the ground was not uneven and that it did not have "any cracks, loose rock or gravel, indentations, potholes, or anything that [he] thought could impact the competitors' performance or cause an issue." CP at 105.

Even if these facts are considered in the light most favorable to Gutierrez, he fails to meaningfully contest them. Beyond statements from his own deposition that he thought the wheel's base leg was "short" and the ground was at "a slight grade," Gutierrez provides no expert or lay testimony or documentation supporting his claim that the Conan's Wheel strayed from competition standards or norms. He provides no evidence of other injuries, either during this competition or other competitions using a similar Conan's Wheel. And there is nothing in our record to suggest that anyone else complained about the wheel's base leg or the levelness of the ground. This is far short of the evidence that created a jury question in *Swank* where the plaintiff offered both witness testimony and the testimony of a physician about concussion symptoms and how the young student's behavior exhibited them.[2] *See* 188 Wn.2d at 686-87.

---

[2] It is plausible that Gutierrez rests solely on his minimal allegations because he misunderstands the summary judgment standard. Gutierrez contends that Hardcore failed to provide "evidence negating any issue of material fact." Appellant's Br. at 12. Gutierrez suggests that this required Hardcore to provide evidence from an independent expert or perhaps lay testimony that the ground was level or that the Conan's Wheel could be used on uneven ground, or affirmative evidence that the wheel's base leg was safe. This greatly overstates Hardcore's burden as the defendant—Hardcore had the initial burden to show an absence of evidence to support an essential element of the plaintiff's claim before the burden shifted to Gutierrez. *See Boguch*, 153 Wn. App. at 609. And after the burden shifts, a plaintiff must show that their complaint is supported by more than speculative or argumentative allegations or conclusory statements—the plaintiff must offer specific and detailed facts supported by documentary evidence. *Sanders*, 121 Wn. App. at 600. This, Gutierrez has failed to do.

No. 58985-1-II

Looking at these facts as a whole, even in the light most favorable to Gutierrez, he has not provided substantial evidence that Hardcore failed to exercise even "slight care" regarding the Conan's Wheel event. While it is possible that Gutierrez could have survived summary judgment if he only needed to establish ordinary negligence, more is needed to establish *gross* negligence. *See Boyce*, 71 Wn. App. at 665 ("Evidence of negligence is not evidence of gross negligence . . . ."). We conclude that reasonable minds could not differ that Hardcore's conduct rose above the "slight care" standard for gross negligence.[3]

CONCLUSION

Because Gutierrez has failed to carry his burden, the superior court did not err in granting summary judgment to Hardcore and dismissing Gutierrez's complaint with prejudice. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

VELJACIC, A.C.J.

CHE, J.

---

[3] Given this conclusion, we do not address Hardcore's alternative argument that Gutierrez's claims are barred by assumption of risk principles.

12